### Nat Greer v. International Stock Yards et al.

Decided June 6, 1906.

**1.—Earnest Money—Suit to Recover.**

   In a suit to recover money advanced by plaintiff on a written contract to purchase land, and for damages for the failure of defendants to deliver possession of the premises contracted for, the principles applicable to specific performance of contracts may be looked to in determining the questions involved.

**2.—Contract for Purchase of Land—Specific Performance—Limitation Title.**

In an action for specific performance upon an ordinary contract for the purchase of realty, where the vendor's title by limitation is so clearly established as to make it a matter of law as distinguished from a question of fact, the contract will be enforced; but when the state of the evidence is such as to make the question of title one of fact which must be submitted to the jury, as is ordinarily the case, specific performance of the contract will not be decreed.

**3.—Rejection of Title by Attorney Specified—Conclusive.**

Where a contract for the purchase of property is made subject to the approval or acceptance of the title by the purchaser's attorney, if such attorney disapproves of the title or refuses to accept the same, the vendor can not enforce specific performance of the contract, in the absence of bad faith and unreasonableness on the part of the attorney.

**4.—Failure to Deliver Possession—Damages.**

Where the contract provided that in the event the vendors failed to deliver possession of the premises in question within a certain time they should pay a stipulated sum as liquidated damages, and the vendee refused to accept the title tendered, he was not entitled to recover damages for failure to deliver possession of the premises.

Appeal from the District Court of El Paso County. Tried below before J. M. Goggin.

*T. A. Falvey* and *Walters Davis,* for appellant.—A title by limitation, dependent upon oral evidence, is not a good and sufficient and a marketable title, as found by the court, or such title as was required by the contract between plaintiff and defendants. Moling v. Mahon, 86 S. W. Rep., 959; Hollifield v. Landrum, 71 S. W. Rep., 981; Moore v. Williams, 115 N. Y., 586; Burwell v. Jackson, 9 N. Y., 535; Delavan v. Duncan, 49 N. Y., 485; Vought v. Williams, 8 Law Rep. Ann., 592; Brooklyn Park Coms. v. Armstrong, 45 N. Y., 234; Moore v. Williams, 115 N. Y., 586; Swayne v. Lyon, 67 Pa., 436; Irving v. Campbell, 8 Law Rep. Ann., 621.

A vendor who contracts to furnish the vendee with "a good and sufficient title," must furnish a written marketable title, or the vendee is entitled to a rescission of the contract. Hollifield v. Landrum, 71 S. W. Rep., 981; Moling v. Mahon, 86 S. W. Rep., 959; Vought v. Williams, 8 Law Rep. Ann., 592.

A vendee who has contracted for "a good and sufficient title," is not bound to accept a title by limitation dependent on oral proof to establish the same. Hollifield v. Landrum, 71 S. W. Rep., 981; Moling v. Mahon, 86 S. W. Rep., 959; Vought v. Williams, 8 Law Rep. Ann., 592.

The acceptance by Turney & Burges of the title was a condition precedent by the contract before plaintiff was compelled to receive the same. Moling v. Mahon, 86 S. W. Rep., 958; Boettler v. Tendick, 5 Law Rep. Ann., 270, and notes on pp. 272, 273; Church v. Shankling, 17 Law Rep. Ann., 207, and notes. Townshend v. Goodfellow, 12 Am. St. Rep., 740; Hedderly v. Johnson, 18 Am. St. Rep., 522; Shriver v. Shriver, 86 N. Y., 575; Pratt v. Eby, 67 Pa. St., 396.

The finding by Turney & Burges that defendants' title was good by limitation was not accepting such title as good and sufficient marketable title as required by the contract. Townshend v. Goodfellow, 12 Am. St.

Rep., 740; Hedderly v. Johnson, 18 Am. St. Rep., 522; Shriver v. Shriver, 86 N. Y., 575; Pratt v. Eby, 67 Pa. St., 396.

*R. X. Burges* and *Edwards & Edwards,* for appellees.—A title by limitation is always dependent upon oral evidence, and is a good and sufficient and merchantable title and such title as was required by the contract set out in plaintiff's petition. Fant v. Wright et al., 61 S. W. Rep., 514; Hubert v. Grady, 59 Texas, 506; Scannel v. American Soda Fountain Co., 61 S. W. Rep., 889, 161 Mo., 606; Hollifield v. Landrum, 71 S. W. Rep., 979; Am. & Eng. Cy. of Law, 2d ed., vol. 29, p. 613.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellant, Nat Greer, against appellees, the International Stock Yards Company, John Caldwell, Julia Caldwell and Felix Martinez to recover on the written contract, mentioned in our conclusions of fact, the sum of $1,000, advanced by appellant to appellees in pursuance thereof, and the further sum of $915 as damages stipulated for the failure of appellees to deliver possession of the premises, made the subject of such contract, within sixty days after the execution thereof.

The appellees, after interposing a number of exceptions (all of which were overruled) answered by a general denial, and by pleading specially that the title to the property, which was the subject of the contract was good and that the attorneys, to whom, by its terms, the title was to be submitted for approval and acceptance, would have by the use of reasonable diligence, decided that it was good; that as soon as the written opinion of said attorneys, disapproving said title and pointing out their objections thereto, was presented to appellees they (appellees) presented to said attorneys a statement in regard to said title which showed the same was good by the statute of limitations and that all objections made by them to the title were immaterial, or had been obviated by corrections, and that appellant was informed of such facts, and defendants, about the 7th of October, 1904, tendered appellant a good and sufficient title by warranty deed to said real estate and immediate possession of the premises and demanded that he carry out his contract, which plaintiff declined and refused to do, and that by reason of the premises he is not entitled to recover anything by this suit. They also pleaded that the clause in the contract upon which appellant predicated his action for liquidated damages was intended as a penalty and not a stipulation for such damages. Julia Caldwell filed a separate plea alleging coverture at the time, and ever since said contract was made.

The case was tried without a jury and judgment entered, upon conclusions of fact and law found, that the plaintiff recover nothing on his claim for the $1,000 sued for and that he have judgment on his demand for liquidated damages against the International Stock Yards Company and John Caldwell for the sum of $195.54. From the judgment so rendered this appeal is prosecuted.

*Conclusions of Fact.*—The agreement upon which appellant based his suit is in writing and was executed on the 25th of June, 1904, by the International Stock Yards Company, John Caldwell, Julia Caldwell and Felix Martinez, parties of the first part, and Nat Greer, party of

the second part.   After reciting that the International Stock Yards Company, John and Julia Caldwell are owners of certain described real property situated in the city of El Paso and desire to sell the same to the party of the second part, and that he desires and is willing to purchase the same according to the terms and conditions set out therein, it contains the following agreements and stipulations:

"It is therefore agreed and stipulated as follows:   That the parties of the first part agree to sell said property and premises to said party of the second part for the agreed sum of sixteen thousand ($16,000) dollars, one thousand dollars of which is to be paid upon the signing and delivery hereof, and the remaining fifteen thousand dollars to be paid whenever the parties of the first part shall deliver proper deed of conveyance, warranty in form, to said second party, and when Turney & Burges, attorneys for party of the second part, shall accept title to said premises heretofore described and shall approve deed therefor, provided said deed shall be tendered and said title be approved on or before six months from this date.

"It is agreed and understand that should the parties of the first part fail to make good and sufficient title to said premises, as hereinbefore stipulated, within said space of six months, and give full possession to said party of the second part of said premises, then, and in that event, all the parties of the first part agree and bind themselves to return to said second party said sum of one thousand dollars already paid, and release him from any and all obligations to carry out any of the other terms and conditions of this agreement.

"However, should said party of the second part fail and refuse to comply with his said agreement already provided for, and fail to accept said deed when tendered him, and said title being approved by his said attorneys, and fails to pay off the balance due under this contract, fifteen thousand dollars, that then and in that event he shall forfeit to the parties of the first part all of said sum of one thousand dollars already paid.

"It is agreed and understood that the parties of the first part are to have sixty days in which to deliver possession of said premises to said second party without penalty, but should they, the parties of the second part, not deliver possession of said premises to party of second part within sixty days, that then and in that event, for every day after sixty days, such party of the second part is deprived of the premises and possession thereof, and of said property, the parties of the first part agree and bind themselves to pay monthly the sum of seven and fifty one-hundredths dollars for each day during which they shall fail to deliver possession of said premises and property to said party of the second part, which payment and liability is to continue for the space of four months after the expiration of said sixty days, provided for herein."   (The next succeeding paragraph in the agreement does not seem to be material to any issue in the case and will be omitted.)

"The respective parties hereto agree and bind themselves to carry out and perform all the provisions hereof, made binding on them respectively, said Felix Martinez, however, does not own or hold title to any of said property, but is to receive and hold said sum of one thousand dollars for the use and profit of all the parties of the first part, and is to, as far as he is able, carry out the provisions of this contract made binding upon

all the parties of the first part and, with the others of said parties of the first part, is responsible for the return of said one thousand dollars, should said party of the second part be released from the provisions of the same and should title to said property fail."

The trial judge, after finding that the foregoing contract was executed by the parties, in his conclusions of fact, found "that thereafter, appellees furnished appellant's attorneys, Messrs. Turney and Burges, an abstract of their title to the property described in the agreement; that after examining the abstract, said attorneys were of the opinion it did not show a good and sufficient title and disapproved the same giving a written opinion addressed to appellant, indicating defects in the title to the property as it was shown by the abstract, which opinion concluded as follows: 'For the reasons above pointed out we have been unable to approve the title of the International Stock Yards Company to said property, as shown in the abstract. Respectfully submitted, Turney and Burges;' that Mr. Turney, of the firm of Turney & Burges, informed plaintiff at the time that, although the record title as shown by the abstract was defective, the proposed grantors had a good title to the property by limitation, but advised Greer not to accept a title by limitation, and, when, on October 3, 1904, a deed to the property was tendered Greer, he rejected the same, and the title, as it stood under the advice of his attorneys; that on the 4th of October, 1904, Messrs. Edwards & Edwards, acting in behalf of the defendants, addressed a letter to Messrs. Turney & Burges, as attorneys for Greer, calling their attention to certain sources of information as to the record title, and also to the fact that the title in defendants had been made perfect by limitation, and also offering to relieve the title of two certain unreleased liens referred to in the letter of Turney & Burges to Greer.

"That notwithstanding the offer to release the liens and the fact that there was a perfect title by limitation in the proposed grantors, Turney & Burges advised the rejection of said title, and the same was rejected by Greer on the 3d day of October as well as the conveyance tendered, upon the ground there was no good and sufficient record title shown in the proposed grantors and that a good title by limitation was not sufficient and did not meet the requirements of said contract or agreement above set out and executed by the parties on the 7th day of July, 1904, and that the said Turney advised and informed the said Greer, however, at the same time that, in his opinion, said title of the defendants, The International Stock Yards Company and the Caldwells, was a good and provable title by limitation, but that he would not advise him to accept a title by limitation, and that he would not approve any title by limitation.

"That the record title of the defendants to the said property was defective and did not constitute by itself a good and sufficient title to said property, but that aided by limitation the said title was good and sufficient and a marketable title, and it was admitted by the parties in open court of record that the title held by the proposed grantors of the real estate described in the contract was a good title by limitation at the time the opinion of Turney & Burges set out in plaintiff's petition was given, and that William H. Burges, a member of the firm of Turney & Burges,

would testify if present that in his opinion the title was good by limitation at the time said opinion was given.

"The court further finds that on the 7th day of September, 1904, the time at which possession was to be yielded to the said Greer, or the grantors pay liquidated damages for failure to do so, the said Greer was willing to take possession thereof, but that he was unable to secure possession, and possession was not tendered him until October 3, 1904, at which time he refused title and possession, although up to that time he had been ready to take possession under the contract.

"The court further finds that on July 17, 1904, plaintiff paid defendants $1,000, under the terms of this contract, and about January 25, 1905, he demanded the return of said sum and same is still held by said defendants."

As evidence is found in the record tending to support these conclusions, so far as they are of fact, and only the finding that "the title of the International Stock Yards Company and the Caldwells by limitations is good" (which is rather a conclusion of law than of fact, and will be considered and disposed of as such in our conclusions of law) is gainsaid by appellant they will be adopted as the conclusions of this court.

*Conclusions of Law.*—Upon the foregoing conclusions of fact the trial court found conclusions of law, and, upon such findings entered the judgment appealed from.

The second assignment of error is that "the court erred in holding 'that a title perfected by limitation is a good and sufficient title, and falls within the terms and language used in said contract as much so as a good and sufficient record title;' that is, the words 'good and sufficient title' included a good and sufficient title by limitation as well as good and sufficient record title, or record title made good and sufficient by limitation; for the reason that such title by limitation was not the title contracted for by the plaintiff."

We take it that the principles applicable to specific performance of contracts may be looked to in determining the question presented. If, in view of such principles, in a suit brought by appellees against appellant to compel him to perform his contract to purchase the land, he would be held, were it not that the damages for such failure stipulated by the contract, to its performance, then, he should not recover in this action, for the reason the money sued for is the damages stipulated for his failure to do what otherwise, he should do under the contract. On the other hand, if in such a case, it should be held the appellees would not be entitled to a decree of specific performance against him, then, he should recover the money sued for, for, in that event it would be apparent that the damages it was intended to cover had not accrued.

In an action for specific performance, "if there arises, either on the face of the pleadings, or from the examination made during the progress of the suit, a reasonable doubt concerning the title to be made and given by the vendor, the court, without deciding the question between the parties then before it—which decision might not be binding upon other persons, and, therefore, might not prevent the same question from being subsequently raised by other claimants of the land—regards the existence of this doubt as a sufficient reason for not compelling the purchaser to

carry out the agreement and accept a conveyance." (Pomeroy on Contracts (Specific Performance), sec. 198.) This is the rule stated by the eminent author, after an exhaustive examination of the authorities, both English and American, which are cited in a note following its enunciation. While a very few of the cases cited are accessible to this court, an examination of those that are, and others upon the same question, are enough for the deduction of the rule stated.

Upon the same subject it is said by Waterman on Specific Performance, sec. 412, that "although no general rule can be laid down as to the kind of doubt which will induce the court to withhold a decree of specific performance, yet it will do so, if a third person has an interest in, or a claim against the property, however improbable it be that the right will be exercised; for the decree of the court is *in personam,* and not in rem, and binds only those parties to the suit, and persons claiming under them. 'Every purchaser of land has a right to demand a title which shall protect him from anxiety, lest annoying, if not successful, suits, be brought against him, and probably take from him, or his representatives, land upon which money was invested. He should have a title which should enable him, not only to hold his land, but to hold his peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its market value.' When doubts are raised by extrinsic circumstances, which neither the purchaser nor court can satisfactorily investigate, for want of means to do so, the court will refuse its aid. But a threat, or even the possibility of a contest, will not suffice to cast a reasonable doubt on the title. The doubt must be 'considerable and rational, such as would and ought to induce a prudent man to pause and hesitate; not based on captious, frivolous, and astute niceties, but such as produce real *bona fide* hesitation in the mind of the chancellor.' . . . Specific performance will not be decreed, unless the vendor can give a marketable title, even though a court might consider the title good. But there must be some debatable ground on which the doubt can be justified. A title may be doubtful because it depends on a doubtful question of law not settled by any binding authority, or of which different courts may take an opposite view, or where those who may hereafter claim an interest in the property, will not be concluded by the decree. A doubtful title can not be made marketable by an opinion of the court on a case stated between the vendor and vendee. A title depending upon the bar of the statute of limitations, may be a marketable title which a purchaser will be compelled to accept, if it clearly appears that the entry of the real owner is barred. Where a contract for the purchase of property is 'subject to the approval of the title by the purchaser's solicitor,' if the latter disapproves the title, the vendor, in the absence of bad faith or unreasonableness on the part of the purchaser or his solicitor, can not enforce specific performance of the contract."

Again, it is said by Fry on Specific Performance, secs. 579, 580, that "though the court may entertain an opinion in favor of the title, yet if it be satisfied that the opinion may fairly and reasonably be questioned by other competent persons it will refuse specific performance. . . . The court will never compel a purchaser to take title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings.

The court will not, to use the favorite expression, compel him to buy a lawsuit."

Upon this subject it is said by the Supreme Court of the United States, in Wesley v. Eelis, 177 U. S., 373, book 44 (L. E.), 811, after stating the equitable rule, that a defendant in proceedings for specific performance shall not be compelled to accept a title in the least degree doubtful, says: "It is not necessary that he should satisfy the court that the title is defective so that he ought to prevail in law; it is enough if it appear to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title or rights incident to it. He ought not to be subject, against his agreement or consent, to the necessity of litigation to remove even that which is even a cloud upon his title. . . . Courts of equity do not force the purchasers to take any thing but a good title, and do not compel them to buy lawsuits." (See also Hedderley v. Johnson, 18 Am. St. Rep., 521.)

In Fahy v. Cavanagh, 44 Atl. Rep., 156, it is held, after an exhaustive examination and consideration of the authorities, that "if the title depends upon a question of fact, which is not a matter of record, and can not be so made, then the rule is . . . that the court will not compel an unwilling purchaser to take the title. 'In cases where the doubt in relation to title is one of fact, which the court is called on to consider, the general rule has been declared to be that the court will never compel a purchaser to take a title where the point on which it depends is too doubtful to be settled without litigation, or where the purchase would expose him to the hazard of such proceedings.' " (See also Townshend v. Goodfellow, 12 Am. St. Rep., 736.)

But from the principles stated it does not necessarily follow that a title resting upon the statute of limitations is insufficient to support an action for specific performance. Indeed it has been held, both in England and America, that a title by adverse possession may be so clearly proved, and be so free from doubt, as to be a proper foundation for a decree of specific performance against the purchaser. See Conley v. Finn (Mass.), 50 N. E. Rep., 461, and authorities cited.

We apprehend the rule to be, that, in an action for specific performance upon an ordinary contract for the purchase of realty, where the vendor's title by limitation is so clearly established as to make it a matter of *law* as distinguished from a question of fact, the contract will be enforced, but when the state of the evidence is such as to make the question of title one of fact which must be submitted to the jury, as is ordinarily the case, specific performance of the contract will not be decreed. Therefore, while the principle, "that a title perfected by limitation is a good and sufficient title," stated in this assignment, may be abstractly correct, yet if it does not appear as a matter of law that appellees had such a title; but if the state of the evidence is such as to make the question of title depend upon facts to be determined by a jury, or the court sitting as a jury, it would not follow that a good and sufficient title, such as was contemplated by the parties under the contract, had been tendered the plaintiff.

The court found that appellees had no title to the property except such as depended upon the statute of limitations. The only evidence intro-

duced to show title by limitations was the affidavits of Allen Blacker and William Treyer. Such affidavits would be no evidence whatever in a suit brought by Milton A. Jones (in whom the abstract furnished appellant by appellees shows an outstanding title to the premises) or those claiming under him, against appellees, or appellant, if he had taken the property, that Jones' title had been extinguished by limitations and a good and sufficient title had been acquired by limitations against him which was in the appellees when they tendered appellant a deed thereto. In other words, when appellant pointed out a defect, fatal to appellees' title, apparent from the abstract of title they furnished him, it rested upon them to show that they had title as a matter of law by virtue of the statute of limitations, and to prove this they only furnished affidavits to appellant and afterwards, upon the trial of this case, to the court, which would be no evidence at all in a suit brought against them by Jones, or those claiming under him, for the land. It can not, therefore, be said that title by adverse possession was so clearly proved and so free from doubt as to form a proper foundation for a decree of specific performance.

But let it be admitted *pro hac vice* that such title was so established, it by no means follows that appellees would, under the contract, have been entitled to compel appellant to take the land, had it not contained a stipulation of the damages for his failure to do so. Under the express provisions of the contract, the balance of the purchase money was not to be paid until defendants delivered to plaintiff "proper deed of conveyance, warranty in form, and when Turney & Burges, attorneys for party of second part (plaintiff) shall accept title to said premises heretofore described and shall approve deed therefor, provided said deed shall be tendered and said title approved on or before six months from this date," and contains this further stipulation: "it is agreed and understood that should the parties of the first part fail to make good and sufficient title to said premises, as hereinbefore stipulated, within said space of six months, and give full possession to said party of the second part of said premises, then and in that event, all parties of the first part agree and bind themselves to return said second party said sum of $1,000 already paid, and release him from any and all obligations to carry out the other terms and conditions of this agreement."

The undisputed evidence shows that Messrs. Turney & Burges refused to accept title to the premises. It is neither pleaded nor contended that such refusal was either arbitrary, capricious, captious or fraudulent. On the contrary the evidence shows that they were governed by the best interest of their client, their understanding of the law and the exercise of the soundest discretion, entrusted to them by all the parties to the agreement. Hear what Mr. Turney, who acted for his firm in the matter, says about it. Referring to the letter of this firm written on October 1, 1904, to plaintiff, he testified: "The firm of Turney & Burges disapproved the title as being a bad title." On cross-examination, in answer to questions asked by appellee's counsel, he testified: "You were never able to satisfy, or did not really satisfy us about these paragraphs two and three in our conversation, as I remember it. I told you I would waive everything except the Jones deed and the other deed, if they were not in the title we would approve the title. . . . You and

I discussed the gap in the title on many occasions, and I say to you now, I would have been glad to approve the title because of the situation we were in. I will say to you, I believe the title by limitation is established, but my instructions from him and my understanding was they wanted a merchantable title such as could be conveyed without extraneous objections each time. I don't believe in that." "Q. You made up your mind that there was no sufficient title except by limitation? A. I knew there was no title except by limitation. I know that now. Q. How do you know? A. I know it from the condition of the abstract. I knew it from what you and other people told me. Q. You made up your mind at the time you delivered your opinion you would not approve the title unless they showed you a record title? A. Unless it was a good record title, unless I could get a record title. Q. Unless you could get a record title you did not propose to approve it? A. Unqualifiedly that was my opinion. Had to be a legal title; would not approve a limitation title, unless it was litigated against all the parties claiming as against all other parties claiming, and when you told me there had been a suit tried in court against other parties, that did not affect me one iota. Q. And you simply turned down the title because you would not approve a limitation title? A. I will not approve this limitation title, such as you brought and such as they furnished, such as Mr. Greer furnished or such as anybody furnished. I understood from you and men that had been used to approving limitation titles here, did not claim adversely your contention here—Judge Caldwell, I understood he claimed adversely to what you claim. Q. And Judge Caldwell later brought suit for these lots? A. When I became acquainted with that fact, it made me more in doubt than ever about your limitation title, in which I took no stock. Q. Did you tell Greer this was a good title by limitation? A. I told Greer that it probably was a good title by limitation. Q. Did you use the word 'probable' in there—Didn't tell him it was a good title by limitation? A. I don't think I did. I told him that it could be shown to be good by limitation, it still would be uncertain, because there might be just as much proof on the other side in regard to the occupancy of the property—would be unsafe to buy a limitation title."

The rule is well settled that where a contract for the purchase of property is "subject to the approval or acceptance of the title by the purchaser's solicitor," if the latter disapproves of the title, or refuses to accept it, the vendor, in the absence of bad faith and unreasonableness on the part of the purchaser or his solicitor, can not enforce specific performance of the contract. (Molin v. Mahon, 86 S. W. Rep., 958; Waterman Spec. Perf., 550; Hudson v. Buck, L. R. 7 Ch. D., 683.)

As, under the contract, the title was to be approved by Turney and Burges, and the undisputed evidence shows that it was disapproved by them, we can see no escape of the appellees from refunding to the appellant the $1,000 advanced them under the contract with legal interest from January 25, 1905, the date on which appellant demanded of the appellees the return of the money. But, since the appellant refused to accept title and deed to the property, we can conceive of no principle of law or equity that would permit him to recover anything by reason of appellees' failure to yield him possession of the property at the time specified in the contract. Clearly he was not entitled to the possession

after rejecting the title and refusing to accept a deed to it, or, if he had taken possession and afterwards rejected the title and refused to go on with the contract, the appellees would be entitled to recover of him the rental value during the period of such possession.

The judgment of the District Court is reversed and judgment will here be rendered in favor of appellant against all the appellees, except Julia Caldwell for $1,000, with interest at the rate of 6 percent per annum from January 25, 1905.

*Reversed and rendered.*

Writ of error refused.