ROOS v. THIGPEN.

(Court of Civil Appeals of Texas. Austin. June 14, 1911. On Motion for Rehearing, Nov. 22, 1911.)

1. SPECIFIC PERFORMANCE (§ 95*)—CONTRACTS FOR SALE OF LAND—MERCHANTABLE TITLE.

Where vendor of land agreed to convey it to the purchaser by a good and sufficient warranty deed, he could not enforce specific performance until tendering both a proper deed and a merchantable title.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 257–277; Dec. Dig. § 95.*]

2. SPECIFIC PERFORMANCE (§ 119*) — CONTRACTS FOR THE SALE OF LAND—TITLE BY LIMITATION.

A vendor of land attempting to obtain specific performance of a contract for its purchase, and tendering title which he claims has been rendered valid by the statute of limitations, has the burden of showing that all persons who might claim any interest in the land are not laboring under disability, which by any chance might stop the running of the statute.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 382, 383; Dec. Dig. § 119.*]

3. VENDOR AND PURCHASER (§ 134*) — CONTRACTS ENFORCEABLE—CONTRACTS FOR SALE OF LAND—"INCUMBRANCE."

A contract for the sale of land stipulating for a good and sufficient warranty deed cannot be specifically enforced at the suit of the vendor where, at the time he offered to convey, the land was subject to vendor's lien notes in a large amount, such lien being an "incumbrance" under Rev. St. 1895, arts. 633, 634, providing that the word "grant" in a conveyance imports a warranty against incumbrances.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 250–254; Dec. Dig. § 134.*

For other definitions, see Words and Phrases, vol. 4, pp. 3519–3527.]

On Motion for Rehearing.

4. APPEAL AND ERROR (§ 1076*) — ERROR WAIVED IN THE APPELLATE COURT—SHOWING.

In the absence of any affirmative evidence showing an admission abandoning the assignment of error in the argument on appeal, such assignment will not be held to have been waived.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1076.*]

5. JUDGMENT (§ 713*)—ESTOPPEL BY RECORD.

In an action by a vendor of land to enforce specific performance of a contract for its purchase, where the purchaser defended on the ground that he was not offered a merchantable title, a judgment rendered long after the time set for the conveyance of the land does not estop the purchaser from showing the vendor's lack of title, even though he was a party to such judgment which by agreement recited that the grantor had title.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1234–1241; Dec. Dig. § 713.*]

6. JUDGMENT (§ 715*)—RES JUDICATA.

Defendant entered into a contract to purchase land owned by plaintiff, but refused to carry it out because plaintiff's title was not clear. After performance of the contract had been refused, the owner of vendor's lien notes which had been executed by plaintiff's grantors, foreclosed making defendant a party, and the judgment, which was rendered by agreement, recited that plaintiff was the owner of the land. Not only was the land subject to these vendor's lien notes, but it was not shown that the original patentee had ever conveyed the land and his heirs were not parties to this judgment. *Held* that, in an action of specific performance, this judgment did not estop defendant from setting up that plaintiff's title was defective, being subject to the claims of the heirs of the original patentee.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1244–1247; Dec. Dig. § 715.*]

7. LIMITATION OF ACTIONS (§ 195*)—EVIDENCE—BURDEN OF PROOF.

In an action for the possession of land where the party in possession sets up and shows title by limitation, the burden is upon those attempting to defeat his title to show that they were laboring under some disability which prevented the running of the statute.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 711–716; Dec. Dig. § 195.*]

Appeal from District Court, Fayette County; L. W. Moore, Judge.

Action by Job Thigpen against Ed Roos. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Brown & Lane, for appellant. Geo. Willrich, Watson & Simmang, and John T. Duncan, for appellee.

RICE, J. This suit was brought by appellee, as plaintiff below, against appellant, as

---

defendant, March 4, 1908, to enforce specific performance of the following contract, executed by them on the 10th of September, 1907, to wit:

"The State of Texas, County of Washington —This memorandum of an agreement this day made and entered into by and between Job Thigpen, of the county of Fayette and state of Texas, party of the first part, and Ed Roos of the county of Bexar, and state of Texas, party of the second part, witnesseth:

"(1) That first party, for and in consideration of the sum of one thousand ($1,000) dollars cash to him in hand paid by the second party, the receipt whereof is hereby acknowledged by the first party, and the further consideration of the sum of eighteen thousand ($18,000) dollars to be paid by said second party to the first party, as follows: Five thousand three hundred and thirty-three and 33-100 dollars cash upon the execution and delivery of the deed to the hereinafter described property as hereinafter mentioned and the remaining twelve thousand six hundred and sixty-six and 66-100 ($12,666.66) dollars in three equal payments payable within one, two and three years from and after the date of the execution and delivery of said deed, has this day contracted to sell and convey and by these presents does contract, bind and obligate himself to convey by a good and sufficient warranty deed, all those five certain tracts or parcels of land lying adjacent to and connected with each other, and lying and being situated in Fayette county, Texas, about twenty miles north of the city of Lagrange and near the town of Ledbetter. Said five tracts or parcels of land containing 950 acres of land in the aggregate, and all being parts of a league of land originally granted to the heirs of Green De Witt and are more fully described in a certain deed of conveyance from F. J. Reynolds to W. H. Gantt bearing date the 4th day of December, 1906, and of record in Book 82, pages 340 to 343 of the deed records of Fayette county, Texas, to which deed and record thereof reference is here made for a better description of said land.

"(2) Second party hereby agrees to purchase said above-described several tracts or parcels of land, and hereby accepts a conveyance thereof on the terms and conditions above stated. Second party also further promises to pay the nineteen thousand ($19,000) dollars for said land as follows: One thousand dollars cash this day and the balance as hereinbefore stipulated, secured by a vendor's lien on the hereinbefore described lands.

"(3) It is also further agreed by and between the parties hereto that said second party is to have 45 days from this date within which to have the title to said several above-described tracts or parcels of land examined and passed upon, and if at the end of said 45 days said title shall be found to be good, then the deed thereto shall be executed and delivered to said second party, but if the title shall prove defective, then said second party shall not be required to take said land, but shall be released from this contract and the one thousand dollars this day paid shall become the property of and shall revert back to the said second party.

"(4) This contract is executed in duplicate, each of the parties hereto retaining a copy thereof.

"Witness our hands, this the 10th day of September, A. D. 1907:

"[Signed] Job Thigpen, Party of the First Part.

"Ed Roos, Party of the Second Part."

Among other defenses asserted by appellant was the failure on the part of appellee to tender him a merchantable title to the land, in accordance with the said contract and agreement, and for which reason he prayed that he have judgment against appellee for the sum of $1,000, with interest, which he paid to appellee at the time of the execution of said contract, and which had not been returned to him. There was a jury trial, resulting in a verdict and judgment in favor of appellee, from which this appeal is prosecuted.

Many interesting questions are raised and discussed in the brief of appellant, to which our attention has been invited; but, believing the consideration of them is unnecessary in view of the disposition that will be made of this appeal, as well as on account of the press of other important cases, now pending on the docket of our court, we will forego a discussion of them. At the time of the execution of the contract sued upon it appears that appellee agreed to furnish appellant an abstract of title to the land in question, which was done.

1. It appears therefrom that a large tract of land, of which that in controversy is a part, was originally granted by the state to Green C. De Witt, and the abstract fails to show any conveyance, either from him or from his heirs, to the parties through and under whom appellee claims title. Nor is it shown who are the heirs of said De Witt, and that some of them are not laboring under disabilities of minority, coverture, idiocy, etc., such as would prevent the running of the statute of limitation against them. No mention, however, is made in the abstract of title by limitation, but appellee asserted in a supplemental pleading that he had good title to the land in controversy by reason of the statute of 5 and 10 years' limitation.

2. It was shown that one McClellan was entitled to a gravel reservation in 60 acres of the land conveyed, from whom no release of which defendant had knowledge, had been obtained at the time that deed was tendered by appellee to appellant.

3. It was likewise shown that 31 acres of

the land conveyed lay within the town of Ledbetter, through which were extended intervening streets and alleys, and that lots had been sold with reference to said streets and alleys; and the undisputed evidence showed that no limitation could have run in favor of appellee as to such streets and alleys.

4. It appears from the undisputed evidence that on the 4th of December, 1906, F. J. Reynolds conveyed the land in controversy to one W. H. Gantt, taking in payment therefor three certain vendor's lien notes, the first for $3,300, due on or before January 1, 1908; the second for $3,000, due January 1, 1909, and the third for $3,000, due January 1, 1910, bearing interest and providing for attorney's fees and reserving a vendor's lien upon the land to secure the payment thereof, with a stipulation that the failure to pay either of said notes or the interest thereon, would mature the entire series. On the 27th of January, 1907, Gantt conveyed said land to appellee.

It likewise appears from the undisputed evidence that at the time the deed was tendered by appellee to appellant, these vendor's lien notes were outstanding and unpaid; and that thereafter, on September 4, 1909, suit was brought by said Reynolds to enforce the payment of the last two of said notes, asking for a foreclosure of his vendor's lien upon said land, asserting at the time that one Stuermer was claiming to own said first note, and asking that he be made a party to said suit, which was done, and in which Stuermer set up ownership of said note and his right to judgment thereon and foreclosure of his vendor's lien preserved therein. Appellant was likewise at his (Stuermer's) instance made a party defendant to that suit. On the 20th of December next thereafter, judgment was rendered in said suit in favor of said Reynolds against Gantt for the sum of $4,500, with 6 per cent. interest thereon from date, together with a foreclosure of the vendor's lien upon said land. Judgment was likewise rendered in favor of Stuermer against said Gantt for the sum of $3,800.55, together with 6 per cent. interest thereon from the 19th of July, 1907, and 10 per cent. attorney's fees, with foreclosure of vendor's lien upon said land; providing, however, that the judgment in favor of Reynolds should be superior to that in favor of Stuermer. But it appears that said judgment and liens mentioned therein were not released until January 20 and 22, 1910, respectively.

Appellee, through his attorney, on the 17th day of February, 1908, sent appellant his warranty deed to said land, duly acknowledged, inclosing for his execution the notes mentioned in said agreement, demanding the payment of the cash consideration therein specified, less the $1,000 which had been paid at the execution thereof by appellant to appellee, stating in his letter accompanying the same that said vendor's liens would be released. But appellant, on account of the defects in the title, declined to accept said deed, pay said money or execute said notes, of which fact appellee was apprised. Prior to this time, however, appellant's attorney. who had examined the abstract so furnished, had pointed out the defects in said title herein mentioned, as well as others not necessary to notice, of which fact appellee had been informed, but had taken no steps to cure same.

[1] On conclusion of the trial appellant presented a special charge, asking that the court peremptorily instruct a verdict in his favor, on the ground that plaintiff had not proved that he had a merchantable title to the land described in his petition, which charge was refused, and its refusal is made the basis of the second assignment of error. The contract upon which this suit is predicated, required that appellee should convey the land to appellant by a good and sufficient warranty deed. This means, in our opinion, that he must tender appellant a merchantable title to the land before demanding specific performance of his contract. If the title so tendered is not a merchantable title, then we think that appellant had the right to refuse to accept it, and recover back the money paid thereon. The question arises then, Was the title so tendered a merchantable title? Upon this question it is said in Cooper v. Singleton, 19 Tex. 260, 70 Am. Dec. 330, that "The general rule is that as long as the contract remains executory, the purchaser shall not be compelled to pay the purchase money and take a defective title. * * * That the title is defective is a good defense to the vendee, under contract in fieri."

In Hurt v. McReynolds, 20 Tex. 599, it is said: "It is a familiar law that the general principles of the contract of sale, both in England and in this country, recognize and enforce, while it is still executory the right of the purchaser to a title clear of defects and incumbrances. This right is one, not growing out of the agreement of parties, but which is given by law; and it naturally follows that a court of equity will not decree the specific performance of a contract when the title is bad, or even, as it has been said in modern times, where it is doubtful."

In Baldridge v. Cook, 27 Tex. 569, it is said that "the distinctions between executed and executory contracts for the sale of land are recognized and clearly defined by this court in the case of Cooper v. Singleton, supra. The general rule enunciated in that case, that so long as the contract remains executory the purchaser shall not be compelled to pay the purchase money and take a defective title, has been uniformly sustained and followed in the subsequent decisions of the court (Hurt v. McReynolds, 20 Tex. 601), and other cases in manuscript not

yet reported, and must now be regarded as settled law."

Sugden on Vendors, c. 10, § 3, p. 577m, says: "(1) A court of equity is anxious to protect a purchaser, and to give him reasonable security for his title, not compelling him to take a title without knowing whether it is good or bad. The inclination of the court is in favor of the vendee, and a vendor claiming to be exempted from the general rule is required clearly to establish a case of exception. (2) To enable equity to enforce a specific performance against a purchaser, the title to the estate ought, like Cæsar's wife, to be free, even from suspicion; for it would be an extraordinary proceeding for a court of equity to compel a purchaser to take an estate which it cannot warrant to him. It has therefore become a settled and invariable rule that a purchaser shall not be compelled to accept a doubtful title."

In Greer v. International Stock Yards Co., 43 Tex. Civ. App. 376, 96 S. W. 82, Mr. Justice Neill cites with approval Waterman on Specific Performance, to the effect that "although no general rule can be laid down as to the kind of doubt which will induce the court to withhold a decree of specific performance, yet it will do so, if a third person has an interest in, or a claim against the property however improbable it may be that the right will be exercised, for the decree of the court is in personam and not in rem, and binds only those parties to the suit, and persons claiming under them. Every purchaser of land has a right to demand a title which shall protect him from anxiety, lest annoying, if not successful, suits be brought against him, and probably take from him or his representatives land upon which money was invested. He should have a title which should enable him, not only to hold his land, but to hold his peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its market value." In that case a writ of error was refused by the Supreme Court. The same doctrine is announced in Vought v. Williams, 120 N. Y. 253, 24 N. E. 195, 8 L. R. A. 591, 17 Am. St. Rep. 634.

[2] While it is true the plaintiff had shown title by limitation of five and ten years to the land, if the owners of the legal title were not laboring under disability yet there was absolutely no evidence whatever showing or tending to show, that there were not heirs of Green De Witt who might be laboring under disabilities; and it was necessary to show this before it could be said that plaintiff had title by limitation, even if appellant were compelled to accept a limitation title. In the case of McLaughlin v. Brown, 126 S. W. 292, it is said: "It was evidently the intention of the parties that an abstract should be furnished by appellant that would evidence a perfect title. The inducement held out by appellant to appellee to buy was that

he had a perfect title, and as an evidence of it stated that a loan and trust company had loaned money on it. Appellant had not furnished appellee with a perfect record title, as was in contemplation of the parties, and cannot be heard to say that the title had become invulnerable by lapse of title. The parties did not contract as to title by limitation. * * * Even if the parties had contracted for title by limitation, there was not necessary proof to establish such a title. To require a purchaser to accept such a title it must appear that the possession has been of the character and for the length of time required by the statute; that there are no persons having probable claims who are laboring under personal disabilities; and it must appear that the purchaser will have means at hand to establish his title by adverse possession if it should be attacked by third persons. A purchaser cannot be made to take a title, which if attacked in the remote future can only be sustained by witnesses who may die or become inaccessible. Maupin's Marketable Title, p. 740. No affidavits of other evidence of adverse possession of any kind accompanied the abstract of title. The title by limitation, if it existed at all, depended upon the evanescent testimony of men whose lips may at any moment be closed in death and their testimony forever lost." See, also, Bowles v. Umberson, 101 S. W. 842; Moling v. Mahon, 86 S. W. 958; Greer v. Int. Stock Yards, supra.

The court therefore erred in giving the instructions based on the 5 and 10 year limitation, and in declining to give the charge asked on this subject by appellant, for which reason the case should be reversed.

[3] Coming to the question raised by the outstanding incumbrances evidenced by the vendor's lien notes in favor of Reynolds and Stuermer, aggregating something over $9,300, besides interest and attorney's fees, which the undisputed evidence shows were not paid off for more than two years after the deed in question was tendered, it would seem that there can be no question, but that it became the duty of the court to give the peremptory charge asked by appellant. Under our decisions, Reynolds, who held the vendor's lien notes, was the owner of the superior title to the land at the time that plaintiff tendered the deed to appellant; and to say that appellant was under obligation to take the title so tendered, meant that he was required, not only to make the first payment, but to execute and place in the hands of the plaintiff negotiable promissory vendor's lien notes for over $12,000, that might be transferred to innocent holders, in payment for land already incumbered to the extent of nearly $10,000. The action for specific performance is an equitable one, and before a plaintiff is entitled to it, he must come into court with clean hands, showing a willingness to do equity. It would certainly seem to us unconscionable to demand of appellant, who wished to purchase this land, as shown by the

record, with the expectation of organizing a corporation to exploit it for coal, the initiatory steps for which organization depended entirely upon the fact that he should first acquire a merchantable title to the land, the acceptance of the title thus tendered. If appellant had the right to demand, as the authorities indicate, a marketable title, and that a marketable title means a title free from defects and unincumbered, then the title tendered did not meet the requirements of the law.

In Maupin on Marketable Titles, c. 32, § 10, it is said that "Inasmuch as the law implies a contract that the purchaser shall receive a good title to the land, free from all defects, charges and incumbrances, it would seem unnecessary that the purchaser should insert in the contract any provision assuring him such title. Unless the facts clearly showed that the parties were contracting especially with reference to known defects of title, it would be difficult to perceive any ground upon which said decision can be rested, since no man in his senses would bargain for a shadow, when the substance is equally within his reach." The same author further says: "The purchaser is entitled to require from the vendor, in the absence of any provision in the contract, a good marketable title, free from all defects or incumbrances. The right to a good title does not grow out of the contract between the parties, but is given by the law, and is implied in every contract of sale; and the rule is general that a contract for the sale of land which is silent as to the title or interest to be conveyed, implies an agreement to convey, not only an unincumbered and indefeasible estate, but such an estate in fee simple." See, also, Conover v. Tindall, 20 N. J. Law, 214, 40 Am. Dec. 222. Rev. Civ. Stat. arts. 633, and 634, the first of which prescribes that by the use of the words "grant" or "convey," the following covenants are implied: That previous to the time of the execution of such conveyance the grantor has not conveyed the same estate or any right, title, or interest therein to any person other than the grantee; and, second, that such estate is at the time of the execution of such conveyance free from incumbrances. By the latter article the term "incumbrances" includes taxes, assessments, and all liens upon real property.

Believing that this case has been fully developed in so far as relates to the outstanding vendor's lien notes, which existed at the time that the deed was tendered by appellee to appellant, which prevented the title from being marketable at that time, and that under the contract entered into by them that appellant was justified in refusing to accept the conveyance so tendered by appellee, we hold that this case should now be reversed and judgment here rendered in favor of appellant for the sum of $1,000, being the amount paid by him on said contract at the time of its execution, and which has not been returned to him, together with 6 per cent. interest thereon from that date, and it is accordingly so ordered.

Reversed and rendered.

### On Motion for Rehearing.

[4] It is contended in the motion for rehearing that judgment for $1,000 in behalf of appellant was not justified because it is urged that counsel for appellant in his oral argument on the hearing abandoned the assignment presenting this question in his brief. The court has no recollection that any such admission as here claimed was in fact made by counsel for appellant. It cannot be expected, in the multiplicity of our duties, that we could recall all that may occur in oral argument upon the hearing; and in the absence of any affirmative evidence showing, or tending to show, that any such admission was in fact made, we are not disposed to reverse our holding upon this question.

[5] It is further contended in said motion that appellant is precluded from asserting that title to the land was not in appellee, because he was a party to cause No. 6,200, in which a judgment by agreement was entered, that appellee did have title to this land, the proceedings in said cause No. 6,200 having been pleaded in this case. We think appellant is not estopped from asserting the contrary, for the reason that said judgment was not rendered until long after the time that by contract appellee had bound himself to furnish a good and sufficient title to the land, and long after the time when the same was so tendered, and should not be held to relate back and prevent appellant from urging a defense that in fact appears to have existed at the very time the deed should have been made.

[6] Second, because the chief object of said suit was merely to foreclose certain vendor's lien notes upon the land, and was never intended to establish the title to said land as against the heirs of Green De Witt, the original grantees thereof, and the agreement that is shown to have been signed by defendant, and upon which judgment was rendered in said cause did not recite that Thigpen had title against all persons, but only that title was in Thigpen as against the parties to said suit. The heirs of Green De Witt not being parties thereto, of course were not bound thereby, and their rights were not determined therein, for which reason we did not deem it necessary to refer to and discuss in our original opinion the effect of said agreement or judgment in cause No. 6,200. [7] While it is true as claimed by appellee in his motion for rehearing that if this was an action instituted against him for land, and he had pleaded and shown title by limitation, then, in order for the plaintiff in such a case to avoid the effect of such defense, the burden would rest upon the plaintiff to show that such limitation was

not effective as against him, because he was laboring under such disability as to prevent the running of the statute of limitation as to him. But such rule, we think, is not applicable in a suit brought for specific performance, for the reason that the plaintiff, in that character of a suit must tender a merchantable title; and, even if a limitation title could be regarded as such, then the burden is upon the party offering it, not only to show that he had limitation, but likewise that there were no parties laboring under disabilities who might, in the future, lay claim to the land. See McLaughlin v. Brown, 126 S. W. 292; Maupin's Marketable Title, p. 740; Bowles v. Umberson, 101 S. W. 842; Moling v. Mahon, 86 S. W. 958; and Greer v. International Stock Yards Co., 43 Tex. Civ. App. 370, 96 S. W. 82.

While not controverting the propositions of law contended for by appellant on some of the other questions urged in the motion for rehearing, still, we do not think the doctrines announced therein are applicable to the facts as shown by the record in this case, for which reason said contentions are regarded as without merit; and, finding no reason to change our views heretofore expressed with reference to the merits of this appeal, the motion for rehearing is in all things overruled.

Motion overruled.