### CLARK et al. v. RAY et al.
No. 13396.

Court of Civil Appeals of Texas. Fort Worth.

June 19, 1936.

Rehearing Denied Sept. 25, 1936.

W. E. Fitzgerald and T. A. Hicks, both of Wichita Falls, for appellants.

Ray Bland and Kilgore & Rogers, all of Wichita Falls, for appellees.

DUNKLIN, Chief Justice.

Arthur Clark, as party of the first part, and George B. Ray and M. Staniforth, as parties of the second part, entered into a written agreement, of date March 26, 1934, by the terms of which the first party agreed to deliver to the second party a good and valid assignment of an oil and gas lease covering 110 acres of land in Wichita county, upon acceptance of title by the second party, and also to furnish second party with a complete abstract of title to. the land within a reasonable time after the signing of the instrument, not to exceed ten days from the date thereof, with the further stipulation that the second party should have five days from the time of delivery to second party of the abstract to examine the same and prepare and furnish any and all title objections and title requirements; and that the first party should have ten days from the receipt of such objections within which to cure the same and to show good and merchantable title to the lease. It was further provided that immediately upon notification to first party by second party that all title requirements and objections had been cured, first party would then deliver to second party the assignment of the lease contracted. for. In consideration for the assignment of the lease, the second party agreed to pay to first party $150 in cash and an oil payment of $17,500, the first $10,000 of which was to be paid out of one-eighth of all the oil produced from the lease, and the remaining $7,500 to be paid out of one-sixteenth of all the oil produced and marketed from the lease.

As a consideration for the first party's contract, the second party agreed to commence the drilling of the well upon the land within 60 days from the delivery to them of the assignment, and to diligently prosecute the drilling in a good and workmanlike manner to a depth of 1,950 feet unless oil or gas was found in paying quantities at a lesser depth.

In that contract it was recited that the first party was the owner of the legal and equitable title to the lease and that E. P. Bowen and G. I. Dorrance were jointly interested with him in the title thereto. That agreement was duly executed and acknowledged by the parties thereto in statutory form.

When that contract was executed, Mrs. Sue Mitchell Hines and Gober Lee Mitchell were asserting some claim or interest in the fee-simple title to the 110 acres described in the contract above mentioned. And in order to meet any objections to Clark's title to the oil lease which he had agreed to assign, he procured Mrs. Sue Mitchell Hines, joined by her husband, J. C. Hines, and Gober Lee Mitchell to execute to Ray & Staniforth the oil lease. That lease was executed on April 27, 1934, which was one month and one day subsequent to the date of Clark's contract mentioned above. At the time of the delivery to Ray & Staniforth, they appended to the original contract of Clark, referred to above, this notation:

"April 27, 1934.

"This contract is to be construed in connection with the lease from Mrs. Sue Mitchell Hines et al delivered today, and to the terms of which I hereby agree.

"[Signed] Ray & Staniforth
"M. Staniforth."

The lease executed by Mrs. Sue Mitchell Hines and Gober Lee Mitchell named George B. Ray and M. Staniforth as lessees and was in the usual form of a standard oil lease to the 110 acres described in Clark's contract to convey such lease. It contained this stipulation:

"The consideration for this lease is the sum of $17,500.00, to be paid out of the oil as and when produced from the leased premises herein and as follows: $10,000.00 to be paid out of ⅛ of the working interest of the first oil produced and saved from said premises, and the balance of $7,500.00, after the payment of the $10,000.00, to be paid out of the 1/16 of the working interest of the oil produced from said premises. Said payments to be made to the following parties: ⅛ to A. Clark; ⅛ to Mrs. Sue Mitchell Hines; ⅛ to G. I. Dorrance and ⅛ to E. P. Bowen. This to be until Mrs. Hines receives $5000 and Bowen and Dorrance receive $4,000.00, then balance to go to A. Clark."

There was a further stipulation that the lease should remain in force for one year from date and as long thereafter as oil or gas is produced from the land by the lessee. In consideration of the lease, the lessee agreed to deliver to the credit of the lessors the oil so contracted for, together with one-eighth of the net proceeds derived from the sale of the gas.

There was a further provision that if no well be commenced on the land on or before July 27, 1934, the lease should terminate as to both parties unless the lessee on or before that date should pay a monthly rental of $———— to cover the privilege of deferring the commencement of a well for ———— months from the date of the instrument.

The instrument embodies this further provision: "If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the said lessor only in proportion which their interest bears to the whole undivided fee."

There was a further warranty of title to the lessee.

This suit was instituted by Arthur Clark, G. I. Dorrance, and E. P. Bowen against George B. Ray and M. Staniforth, composing the partnership firm of Ray & Staniforth, to recover $12,816.66, alleged to be due them for the failure of defendants to drill the well which they contracted to drill under and by virtue of the contract between them, of date April 27, 1934; also for special damages in the sum of $1,000 which plaintiffs alleged as a depreciation in the market value of the 30 acres adjoining the 110 acres covered by the drilling contract, upon allegations to the effect that the expectation of enhanced value of that tract was one of the inducements which caused plaintiffs to enter into the contract for the 110 acres described in the written contract of April 27, 1934.

It was alleged in the petition that plaintiffs had performed all of their obligations under the written contract, including the furnishing to the defendants abstract of title within the ten-day period stipulated in the contract.

In addition to a general denial, the defendants pleaded specially the failure of plaintiffs to furnish an abstract of title within the ten day period stipulated.

By supplemental petition plaintiffs alleged that they had tendered an abstract of title within the ten-day period, but defendants

stated that they preferred to postpone the examination of the title until the settlement of the question of title between the fee owners and the plaintiffs, and that thereafter, on April 27, 1934, which was one month after the date of the contract, the fee owners and plaintiffs agreed among themselves that the fee owners would execute a lease to the defendants direct covering the acreage described in the contract, which agreement met with the approval of the defendants, and, in accordance therewith, the lease mentioned above was in fact executed and accepted by the defendants. It was further alleged that on that date plaintiffs tendered and offered to deliver to defendants an abstract of title, but that the defendants waived such delivery.

The case was tried before a jury on special issues, in answer to which the jury made findings as follows:

(1) Plaintiffs Bowen and Dorrance approved and adopted the contract made on March 26, 1934, by Arthur Clark and the defendants Ray & Staniforth.

(2) On April 27, 1934, plaintiffs procured the fee owners to execute and deliver to defendants the lease mentioned above, which was accepted by the defendants in satisfaction of plaintiffs' contract to execute such a lease.

(3) The defendants refused to begin to drill a well to the depth of 1,950 feet on the lease within the ninety-day period from the 27th day of April, 1934; the reasonable and necessary cost of such drilling would have been $3,225.

(4) The reasonable cash market value of seventh-eighths working interest in the lease on the 110 acres on April 27, 1934, was $275, and the reasonable increase in cash market value of the 30 acres not covered by the lease had the well been started within the ninety days period from April 27, 1934, would have been $75.

Special issue No. 12, and answer thereto, reads as follows:

"Do you find from a preponderance of the testimony that defendant Staniforth, on April 27, 1934, stated to plaintiff Dorrance that he would not require plaintiff to deliver to him a complete abstract of title to the property in question?

"Answer: No."

The finding of the jury to issue No. 12 is attacked by appellants as being unsupported and contrary to the overwhelming preponderance of the evidence.

According to the pleadings of the plaintiffs, the date of the waiver was definitely fixed as of date April 27, 1934, which was one month subsequent to the date of the contract on which the suit was based. In support of the assignment appellants cite the testimony of Herman Mitchell, who represented the fee owners and who delivered the lease of the fee owners to the defendants, and also the testimony of plaintiff Dorrance, who went with Mitchell to deliver the lease to the defendants Ray & Staniforth. According to the testimony of both of those witnesses, at the time the lease was delivered to Staniforth from the fee owners, he was told that the abstract was in Mr. Cox' office, and an offer was made to get it and deliver it to Messrs. Kilgore & Rogers, attorneys for Staniforth; but the latter replied that he preferred that the abstract be left where it was and he would get it himself. The plaintiff Dorrance further testified that he heard no further complaint from Staniforth about the contract until the receipt of a letter from him, of date May 18, 1934, containing the statement that he did not expect to drill a well and he was notifying plaintiffs of that fact so that they might make other arrangements.

Appellants also cite the testimony of defendant Staniforth himself, as follows:

"Q. Dorrance and Mitchell were there and they told you, or Mitchell told you where his abstract was and asked you if you didn't want him to go get it and give it to you then, and you told him no, you would get it if you wanted it? A. I might have said I would get it when I wanted it. I did not say 'if.' I discussed with him I think the fact we could not get to it. I was leaving then and going to be gone."

However, Staniforth testified, in substance, that the discussion with Mitchell and Dorrance concerning the abstract was a hurried one and was only incidental to the matter of accepting the lease from the fee owners, of date April 27, 1934. He further testified unequivocally that he never at any time told Mitchell or any of the plaintiffs that he would waive an examination of the abstract of title, or the furnishing of same by plaintiffs.

The evidence showed that prior to the execution of the contract sued on the plaintiffs had been involved in litigation with the owners in fee of the 110 acres in con-

troversy. Mitchell, the representative of the fee owners, testified that within the ten-day period from the date of the contract he took a supplemental abstract to the office of the defendants' attorneys, Messrs. Kilgore & Rogers, but told them at the time that the lease theretofore held by Clark and his associates, and which they· had contracted to assign to the defendants, was of questionable validity, and that the matter would have to be adjusted before the fee owners would be willing to make the lease direct to the defendants. He further testified, however, that the original abstract was not delivered to the attorneys at that time. He further testified that Rogers, one of defendants' attorneys, told him there would be no use in going into the abstract until he could clear up the differences between the fee owners and Clark and his associates. He further testified that he was to get $5,000 out of the lease executed by Mrs. Sue Mitchell Hines, his mother, and· Gober Lee Mitchell, his brother, who were the fee owners.

The uncontroverted testimony of defendants' attorneys, Messrs. Kilgore and Rogers, was to the effect that the abstract of title left with them by Mitchell was only supplemental to an original abstract which was never delivered to them at all; and there' was no proof that the original abstract of title was ever delivered to the defendants or their attorneys. And they waited for the original before beginning the examination of the title.

There is nothing in the testimony that would support an inference that the defendants were willing to accept the lease without an examination of the title by their attorneys. We believe the testimony tended strongly to show that defendants' acceptance of the lease from the fee owners was conditional upon an' examination of the abstract and approval of the title by their attorneys. Furthermore, the jury was not bound to accept the testimony of Mitchell and Dorrance, who were interested witnesses, that Staniforth stated to them that he would not require plaintiff to deliver to him the complete abstract· of title, to the exclusion of the testimony of Staniforth himself that he made no positive statement to that effect, in connection with circumstances tending to corroborate that statement. Accordingly, the assignment of error attacking the finding of the jury in answer to issue No. 12, as being without sufficient support in the evidence, is overruled.

A further special defense urged by Ray & Staniforth to plaintiffs' suit was that plaintiffs did not have a good and merchantable title to the lease by reason of the claim asserted by Seaton Barnes, based upon a letter addressed to him, on February 24, 1934, by plaintiff Arthur Clark, in which the writer stated that he had a controlling half interest in the 140 acres, including the tract in controversy, and giving to Barnes authority to offer a lease for sale for a period of 60 days from that date, and agreeing to deliver seven-eighths interest in the 110 acres in controversy in this suit in consideration of the drilling of a well to a depth of 2,-100 feet, the drilling to begin within a reasonable time and the completion of two more wells under some reasonable drilling requirements, and in further consideration for the payment to the writer of $10,000 out of the oil from one-eighth of the oil produced, and the additional sum of $5,-000 out of one-sixteenth of the oil produced. Barnes filed that letter, together with some character of claim based thereon, in the deed records of the county where the land was situated. That record did not constitute constructive notice of Barnes' claim, but notice of the claim was brought home to the defendants Ray & Staniforth by Barnes, and· in connection with it they were informed that he (Barnes) would insist upon his rights thereunder as against any claim they might have under their contract with Clark, in accordance with advice of his attorney.

Appellants insist that Barnes' claim was not enforceable as against the land in controversy, and therefore it was insufficient to support defendants' plea that plaintiffs were not in position to furnish to defendants a marketable title, which plaintiffs warranted they would furnish.

■ We quote the following from Owens v. Jackson (Tex.Civ.App.) 35 S. W.(2d) 186, 187 (writ dismissed): "Marketable title is not dependent upon whether the purchaser, if sued, could successfully defend such title against those suing. If the record of his title as shown by the abstract discloses such outstanding interests in other parties than his vendor, as would reasonably subject him to litigation, or compel him to resort to evidence in parol, not afforded by the record, to defend his title against such outstanding claims,. it is not marketable."

Also the following from Texas Auto Co. v. Arbetter (Tex.Civ.App.) 1 S.W.(2d) 334, 336 (writ dismissed): "And it is said by Mr. Maupin, citing· indubitable authorities in support of the assertion, that, 'if there be any reasonable chance that some third person may raise a question against the owner of the estate, after the completion of the contract, the title will be deemed unmarketable.' "

And the following from Veselka v. Forres (Tex.Civ.App.) 283 S.W. 303, 306: "The terms 'good title' and 'clear title' are synonymous, and mean that the land should be free from litigation, palpable defects, and grave doubts, and should consist of both legal and equitable title."

Also the following from 66 C.J. p.·867: "A title, to be marketable, must also not be in litigation, or be such as may, to a reasonable probability, subject the purchaser to the hazard and expense of future litigation necessary to defend or protect it."

To the same effect, see Greer v. International Stockyards Co., 43 Tex.Civ.App. 370, 96 S.W. 79 (writ refused), and 57 A. L.R. 1288, 1293, where this is said: "The doubt must be of such character as to deter a prudent man, wishing to buy, from making the purchase at a fair value."

█ Plaintiffs had the burden of showing that they were in position to furnish to the defendants a marketable title to the lease; and a finding by the court that by reason of the Barnes' claim, of which defendants had actual notice, they were not in position to furnish title, would be warranted, and same will be presumed, if necessary, to support the judgment denying plaintiffs' recovery. Smith v. Fort (Tex.Civ.App.) 58 S.W.(2d) 1080; Block v. Burch (Tex.Civ.App.) 77 S.W.(2d) 572.

Defendants' plea of the statute of frauds was in their original answer and was addressed to allegations in plaintiffs' second amended petition; based on the written contract and lease of the fee owners to the defendants, with allegations that plaintiffs furnished to defendants an abstract of title within the ten-day period stipulated in the contract. Plaintiffs' pleading urging waiver of their obligation to furnish an abstract of title within the ten-day period was urged for the first time in a supplemental petition filed subsequently to defendants' original answer, specifically alleging plaintiffs' failure to comply with that obligation, and defendants did not plead the statute of frauds as against that·plea of waiver.

Therefore, they are in no position to urge that defense here, for the first time, and we shall not undertake to determine its merits when tested by numerous authorities cited by appellees.

But in view of the foregoing conclusions, it follows that all assignments of error must be overruled and the judgment of the trial court affirmed, and it is so ordered.

### On Motion for Rehearing.

In appellants' motion for rehearing, this is said: "There is no pleading that there was a waiver to. furnish an abstract on April 27th, and further there is no pleading that the appellees agreed to accept the lease without the examination of title, and the opinion of the court goes off on a wrong theory and sidesteps the objection urged and the contention made by the appellants." •

That construction of the pleading is incorrect, as shown by allegations in plaintiffs' trial amendment wherein it was alleged that on April 27th, when the fee owners executed the lease to the defendants, they and plaintiffs "offered to deliver to the defendants an abstract of title and the defendants waived a delivery at said time and agreed that they would get the abstract, after being told where it was, when they got ready to have it examined. That plaintiffs believed that the title was satisfactory and from that time on had heard no complaint or objection as to the title until about the 18th day of May, 1934, at which time the defendants breached the contract. That by the acts and conduct of the defendants herein, they waived the question of delivery of the abstract and examination thereof and accepted the title to said lease."

█ Special issue No. 12, shown in our original opinion, presented the issue of waiver. so pleaded, and was relied on by plaintiffs to excuse their failure to deliver the abstract of title within the time required by their contract, and they are in no position to complain that it was an evidentiary issue only. Nor did plaintiffs object to its submission on any ground. Article 2185, Rev.Civ.Statutes.

█ While the pleading of parol agreement and waiver, shown in plaintiffs' trial amendment, was not embodied in their second amended original petition, yet the defense of the statute of frauds invoked against that petition was also available

against the allegations of the parol agreement and waiver, shown in plaintiffs' trial amendment, which was expressly made in aid of plaintiffs' second amended petition. The trial amendment was overlooked by us on original hearing. However, in view of the conclusion reached that all of appellants' assignments of error discussed above should be overruled and the judgment affirmed, it becomes unnecessary for us to discuss the merits of appellees' counter proposition that the judgment should be sustained, for the further reason that the parol agreement, set out in plaintiffs' trial amendment, was in violation of the statute of frauds (Vernon's Ann.Civ.St. art. 3995)

Appellants' motion for rehearing is overruled.