LOVINA S. ZANE

*v.*

WILLIAM WEINTZ.

[Filed July 29th, 1903.]

1. On a bill filed by the vendor to compel specific performance by a vendee of a contract to buy land, if the vendor's title or power to convey be so doubtful that the court is of opinion that her capacity to convey a fee-simple is fairly debatable, the vendee will not be compelled to accept the title and perform the contract of sale.

2. Where the doubt arises touching the legal effect of some inartificial and ill-expressed instrument, the contract will not be specifically enforced.

---

On bill, answer and proofs.

The bill in this case is filed by Lovina S. Zane, the widow of Horatio G. Zane, who claims that under the last will of her mother, Rachel Ward, she either has title in fee to a lot of land situate at the northeast corner of William and Line streets, Camden, New Jersey, or has a power to sell and convey an estate in fee-simple in that lot. The bill seeks to compel the defendant, William Weintz, who has contracted to purchase the lot, specifically to perform his agreement, accept the complainant's deed, pay the purchase-money, &c.

Zane *v.* Weintz.

The will of Rachel Ward, under which the complainant claims power to convey the lot, is dated the 21st day of June, 1881, and was proven in the year 1885. The three clauses which are claimed to confer a fee-simple estate in the lot upon the complainant, or to authorize her to sell it, are as follows:

"*Item:* I give and bequeath to my daughter Lovina Zane the wife of Horatio Zane, my house and lot situate in Camden, New Jersey on the North East corner of William and Line Streets, for and during her natural life: and after her decease, to such person or persons as would by law inherit the same, if she had an estate therein in fee simple, with the understanding that my said daughter and her said husband shall keep the said property in good repair and pay all lawful taxes, that are assessed against said house and lot.

"*Item:* I give to my relative and friend John V. Beckett in trust a certain mortgage given to me by Horatio G. Zane for Three Thousand Dollars, and any other money in my possession, or papers calling for money at my decease, and all moneys due on said mortgage or other papers calling for money and the said John V. Beckett, is to collect the interest due and to grow due on said mortgage, or other papers that I may have, and out of the first interest so received shall pay for a set of tombstones to be erected at my grave to be selected by my daughter and to be similar, to those now standing at my husbands grave and after paying for said tombstones, and all taxes against said mortgage, or other papers, and other expenses attending the settling of my estate, shall pay over the balance to my daughter, Lovina Zane each and every year during her natural life, and at her death the said Beckett shall pay over all monies in his hands to the heirs of my said daughter, share and share alike. In case my daughter should leave no heir or heirs then to my niece Rachel Beckett and to her heirs.

"*Item:* If my daughter Lovina Zane should survive her husband Horatio G. Zane, then the said Lovina Zane can have control of all monies, property in her own keeping, to sell or dispose if she see fit, but subject to the above devisement and bequeathment."

The defendant, Weintz, admits the making of the agreement to purchase the lot, and substantially all the facts stated in the bill, but denies that the complainant has any title to the lot in question or any power to convey the same in fee-simple. He declares that he is ready to carry out and perform his agreement, and would do so if the complainant were able to make him an efficient deed conveying an estate in fee-simple. It was admitted at the hearing that Lovina Zane has a child.

Zane *v.* Weintz.

*Mr. George J. Bergen,* for the complainant.

*Mr. William Early,* for the defendant.

GREY, V. C.

There is but a single question in this case—has the complainant such title to or power over the lot in question that she is able to convey an estate in fee-simple in it? If she has, the defendant admits his obligation to accept a deed and pay the purchase-money. If she has title, it is admitted she acquired it only by the effect of the above clauses of the will of her mother, Rachel Ward.

At the common law a very interesting question might have arisen under the phrasing of this will. The estate devised to Lovina gives to her in express words a freehold life estate. In the same instrument is a gift over after her death "to such person or persons as would by law inherit the same, if she had an estate therein in fee-simple." The devise in remainder is not in express terms to the "heirs" of the first taker, the phrasing which most usually occurs in devises, which called for the application of the rule in *Shelley's Case,* but the words used are substantially of the same import.

In *Adams* v. *Ross, 1 Vr. 512,* Chief-Justice Whelpley declared, speaking as to the construction of deeds, that the use of the word "heirs" was required to bring the rule into operation, and held that no matter what appeared to be the intent of the grantor, a deed to A and her children conveyed only a life estate to A.

The learned chief-justice conceded that in construing wills a different rule prevails. In *Goodtitle* v. *Herring, 1 East 265,* a testator used the words "heirs male of the body of A," which had a perfectly ascertained technical meaning in the law as words of limitation and not of purchase. Subsequent words in the will indicated that the testator intended the words "heirs male," &c., to be words of purchase, and not of limitation. The judges of the king's bench enforced the intent of the testator as expressed by the qualifying words, holding "heirs male of the body," &c., as used in that will to be words of purchase. The

cases on the point may be found collated in a note appended to the report of *Shelley's Case, 1 Co. \*93 (106) (London ed. of 1826)*.

The words used by the testatrix, Mrs. Ward, in the present case, in defining the persons who are to take in remainder, are precisely equivalent to the word "heirs." The devise is to all those persons who would inherit from the first taker if she were seized in fee. Not children or issue of the first taker, but her inheritors general, whether lineal descendants or collateral relatives.

If the words of the will indicated that the testatrix intended the remaindermen to take as descendants from Lovina, then the rule in *Shelley's Case* would, at common law, have applied, and the devise would be held to have vested a fee-simple estate in Lovina. If in defining the qualifications of the remaindermen the testatrix intended to describe and point out the persons who were to take by direct gift from herself, then the rule would not apply, and Lovina would at common law be held to take only a life estate. *Martling* v. *Martling, 10 Dick. Ch. Rep. 787*, citing from the opinion of Mr. Justice Blackstone in *Perrin* v. *Blake,* as reported in *Harg. Law Tr. 587*.

The question is, however, of little practical importance in the present condition of our law, for the tenth section of our statute of descents (*Gen. Stat. p. 1195*) has abolished the rule in *Shelley's Case* in devises where the first taker has lineal descendants. *Lippincott* v. *Davis, 30 Vr. 241 (Court of Errors and Appeals)*.

Under the operation of this devise, as controlled by that section, the highest estate that Lovina took was a life estate. That is the estate expressed to be given her by the words of the will, irrespective of the common law application of the rule in *Shelley's Case* as to the limitation over. So far as she claims to be entitled to hold a fee-simple estate under the unaided devise to her, the effect of the devise is adverse to her contention. There is no occasion in this cause to consider the nature of the estate limited over to succeed Lovina's life estate.

It is also said that the gift to Lovina, in the last clause, of a power "to sell and dispose if she see fit," &c., enlarges her life estate into a fee-simple. This claim is refuted by the decisions

in *Downey* v. *Borden, 7 Vr. 460;* *Wooster* v. *Cooper, 8 Dick. Ch. Rep. 685* (both in the court of errors and appeals), to the effect that a gift in express words for life only, although annexed to it, there may be an absolute power of disposal, passes to the devisee only a life estate.

It seems to be clear that the complainant cannot rely upon her holding of a title in fee-simple to the lands in question, to put her in a position to demand specific performance of her contract to convey.

She contends also that under the last clause of her mother's will, granting her the power to sell, she is enabled to convey to the defendant a fee-simple estate.

This power provides that if the complainant survive her husband she "can have control of all moneys, property in her own keeping to sell and dispose if she see fit, but subject to the above devisement and bequeathment."

Does this clause so clearly give to the complainant a power to convey a fee-simple estate that a person to whom she has contracted to convey such an estate should be compelled to accept her deed and pay for the lands conveyed solely by virtue of this power?

The phrasing of the clause is clumsy and imperfect, but it may fairly be held to express the intention of the testatrix that in case Lovina survived Horatio she should have the keeping and control of the moneys and property theretofore dealt with in the will, and power to sell and dispose of that property if she saw fit. But the testatrix does not stop here. She declares that Lovina's disposition shall be "subject to the above devisement and bequeathment." The counsel for complainant insists that it is a necessary inference that the testatrix intended by this power to enable her daughter, Lovina, to do something more than that which she was enabled to do under the preceding clauses of this will; that Lovina, as owner of her own life estate, had authority to sell the property (*i. e.,* the lot of land in question) without the power given in this last clause, but her sale of it would only have been of an estate during her own life; that this added power must be construed to authorize Lovina to convey a fee-simple estate; that the words "subject to above

Zane *v.* Weintz.

devisement and bequeathment," if they have any meaning, must refer to the preceding requirement that Lovina and her husband keep the property in repair and pay the taxes, and must mean that if Lovina sold under the power, she must still continue to keep the property in repair and pay the taxes; that the performance of this obligation by Lovina is beneficial and not injurious to the title sold under the power, and no ground of objection on the part of the proposed vendee, who would, by accepting the conveyance of a title which obliged the vendor after sale to keep the property in repair and pay the taxes, be greatly advantaged.'

The clause "subject," &c., was certainly intended to put some limitation upon the estate which Lovina might convey under it. The words used in defining the limitation are the "above devisement and bequeathment." It is almost an absurdity to attempt to find the intention of this testatrix from the meaning of the words of the will, for its whole expression indicates that its words are used with very little knowledge of their real meaning. Yet these words are our only guide in seeking to find out what the testatrix intended.

It seems to me impossible to hold that the words "devisement and bequeathment" refer to the preceding obligation put upon Lovina and her husband to repair the property and pay the taxes. The will puts this obligation upon both husband and wife without mentioning that the wife should continue to perform it after his death. The power to sell was only to be exercised after the husband's death. Where is there anything which indicates that the testatrix intended that the wife should alone repair and pay taxes, and continue to do so after her life estate had been determined by her death? If such a duty is imposed by this will, when does it end? Who is to perform it for Lovina after she is dead?

The obligation to repair, &c., could not have been referred to by the testatrix when she used the words "devisement and bequeathment." That obligation was neither a devise nor a bequest. Moreover, the will does contain a preceding devise of the lot in question to the persons who may be the heirs of Lovina, and a preceding bequest in case Lovina leaves no heir

or heirs of the trust money to the testatrix's niece, Rachel Beckett, and her heirs. If any meaning is to be ascribed to the testatrix's use of these words they might much more plausibly be held to refer to that preceding devise and bequest. If they do, they limit the estate which Lovina may pass in the lot in question by the exercise of the power, so that it will be subject to the devise over, and therefore it could not be a fee-simple.

This will is so inartistically drawn that it is difficult to put any construction upon it which will not leave the vendee, if he is decreed to perform his agreement and take title under it, in danger of losing the property conveyed, at the suit of some future claimant. The decree in this suit, even if favorable to the complainant, would, of course, afford no protection to the defendant against the attack of any claimant of the lands in dispute, who is not a party to this suit.

The doubt as to the complainant's power to convey the lands, if it is not resolved against her, must at least be admitted to be so forceful that her right is fairly debatable. This is sufficient to defeat her attempt to compel specific performance. *Vreeland v. Blauvell, 8 C. E. Gr. 483; Lippincott v. Wikoff, 9 Dick. Ch. Rep. 120.*

The declaration of Lord-Justice James in *Alexander v. Mills, 6 Ch. App. 131,* to the effect that specific performance will not be decreed where the doubt of the vendor's power to convey a good title arises in ascertaining the true construction of some ill-expressed instrument, is also applicable in this case. *Richards v. Knight, 19 Dick. Ch. Rep. 196.*

The complainant's bill should be dismissed, with costs.