ALLING et al. v. VANDER STUCKEN et al. (No. 5823.)

(Court of Civil Appeals of Texas. San Antonio. March 28, 1917. Rehearing Denied April 25, 1917.)

1. SPECIFIC PERFORMANCE ☞95 — TITLE OF VENDOR—ABSTRACT OF TITLE.

In order for the owners of property to require specific performance of a contract to purchase, it devolves upon them to show that they have complied with the terms of the contract, including an agreement to furnish a complete abstract showing a merchantable title to the land.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 257–277.]

2. VENDOR AND PURCHASER ☞130(8)—TITLE OF VENDOR—"MERCHANTABLE"—"MARKETABLE."

Where a contract for the purchase of land provided that the vendor furnish a complete abstract showing a "merchantable" title to the land, which, taken to mean a "marketable" title, is a title reasonably free from doubts that would affect the market value of the land, and a title which a reasonably prudent man would accept as satisfactory, where it was shown that there were several mortgages on the land sought to be conveyed, and no releases were shown in the abstract furnished by the vendors, the purchasers were justified in refusing to pay for the land, and the vendor was not entitled to specific performance of the contract, since, whenever the abstract or record shows that an incumbrance exists, specific performance by a purchaser was not enforced (quoting Words and Phrases, Marketable Title).

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 246.]

3. VENDOR AND PURCHASER ☞144(2)—TITLE OF VENDOR—TIME TO PERFECT.

In a suit by vendors for specific performance of a contract for the purchase of land, in which the vendor agreed to furnish an abstract of title showing merchantable title to the property and deliver the same within 30 days, releases of mortgages against the property, executed 13 months after the date of the contract, were properly excluded as not complying with the terms of the contract; 13 months being more than a reasonable time in which to obtain such releases.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 272–274.]

4. CORPORATIONS ☞480½—REPRESENTATION BY OFFICERS—RELEASE OF MORTGAGE—VALIDITY.

In view of Rev. St. 1911, art. 1173, providing that any corporation may convey lands by deed, sealed with a common seal of the corporation and signed by the president or presiding officer of the corporation, etc., a release of mortgages executed by a church by its corresponding secretary is not valid, although the discipline of the church made three corresponding secretaries executive officers of the board, which also had a president and five vice presidents.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1874, 1875.]

5. EVIDENCE ☞213(1)—OFFER TO COMPROMISE —ADMISSIBILITY.

In a suit by vendors for specific performance of a contract to purchase land, a letter containing an offer of compromise and making no statement of fact was properly rejected.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745, 748–750.]

6. SPECIFIC PERFORMANCE ☞117—PLEADING AND PROOF—WAIVER OF DEFECTS IN TITLE.

In a suit by vendors for specific performance of a contract to purchase land, in which the petition alleged full compliance with every provision of the contract, and the defense was that the vendors had not complied with a provision of the contract requiring him to furnish an abstract showing merchantable title, if the plaintiff desired to depend upon a waiver of the defects in title, it should have pleaded such waiver in the alternative and proved it.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 377–381.]

7. VENDOR AND PURCHASER ☞143—TITLE OF VENDOR—ESTOPPEL.

A receipt signed by some of the purchasers of land to the vendors for commissions for selling the land does not estop the purchasers to deny that the vendors' title was imperfect.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 267–270, 311.]

8. SPECIFIC PERFORMANCE ☞117—PLEADING AND PROOF—OBJECTION TO TITLE—ESTOPPEL.

In suit by vendors for specific performance of contract to purchase land, if a receipt signed by some of the purchasers to the vendors for commissions for selling the land would estop such purchasers to deny that the title of the vendors was imperfect, it could be of no avail to the vendors, if not pleaded.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 377–381.]

9. APPEAL AND ERROR ☞499(4)—REVIEW— BILL OF EXCEPTIONS.

A bill of exceptions, which does not contain the objections urged, is not sufficient to sustain an assignment of error to admission of evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2298.]

10. EVIDENCE ☞183(15)—DOCUMENTARY EVIDENCE—ADMISSIBILITY.

Under Rev. St. 1911, art. 3700, which allows certified copies of lost instrument to be used in evidence, an action by vendors to enforce specific performance of a contract to purchase land, the record of a deed was properly rejected, where there was no affidavit of loss, and no certified copy or notice given to the opposite party, since strict compliance with the statute is required in order to use a copy of a deed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 635–637.]

11. EVIDENCE ☞183(15)—DOCUMENTARY EVIDENCE—ADMISSIBILITY.

The necessity of an affidavit of loss might possibly be dispensed with, if the evidence of witnesses offered who testify to diligent search and inquiry made of the proper person and in the proper place.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 635–637.]

12. EXCEPTIONS, BILL OF ☞26—CONTENTS.

A bill of exceptions must stand or fall by its recitals, and reference to the statement of facts is not permissible.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. § 33.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**13. EVIDENCE �kö>174(3) — ADMISSIBILITY — RECORD OF ANCIENT DEED.**

The fact that a deed is an ancient one will not justify the admission of the record book, showing the record of the deed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 564.]

**14. APPEAL AND ERROR ⊛>1051(1)—REVIEW— HARMLESS ERROR—EVIDENCE.**

In a suit by the trustees of a church for a specific performance of a contract to purchase church property, where it was shown that the trustees had authority to sell the property, the admission of a written consent by a third person to the sale was not error, and could not have made the verdict on that point any more effective.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161, 4162, 4165, 4166.]

**15. VENDOR AND PURCHASER ⊛>140 — CONTRACT—ABSTRACT OF TITLE.**

An abstract of title showing unreleased mortgages, a pending suit for taxes, and mechanics' liens which had not been released, and which failed to show any facts upon which to base a title by limitations, did not comply with a provision of a contract for the purchase of land requiring a complete abstract brought down to date showing merchantable title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264.]

Appeal from District Court, Bexar County; W. F. Ezell, Judge.

Suit by E. B. Alling and others, trustees of the Trinity Methodist Church, against Alfred Vander Stucken and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

C. A. Keller and W. S. Anthony, both of San Antonio, for appellants. W. C. Linden and Lewright & Douglas, all of San Antonio, for appellees.

FLY, C. J. Appellants herein, as trustees of Trinity Methodist Church, instituted suit against Alfred Vander Stucken for specific performance of a certain agreement in writing on his part to purchase certain property belonging to appellants in the city of San Antonio, consisting of a lot and the church and parsonage located thereon. Vander Stucken filed a general demurrer and general denial, and afterwards C. L. Blandin intervened, alleging that he was jointly interested with Vander Stucken in the contract. Special issues were submitted to a jury, and upon the answers judgment was rendered for appellees.

[1] The contract was appended to and made a part of the petition, one clause of which provided that appellants should "furnish a complete abstract brought down to date showing merchantable title to the above-described property, and will deliver the same within 30 days from date." It was also provided that appellees should point out, in writing, any defects in the title within 60 days from date, a reasonable time being allowed in which to cure the same, but if such defects could not be cured the contract should be canceled. Having alleged the contract and the suit being based thereon, in order to require specific performance, it devolved upon appellants to show that it had complied with the terms of the contract, among the number being the agreement to furnish a complete abstract showing a merchantable title to the land.

[2] The word "Merchantable" is not accurately used in connection with a title to land, it being used more correctly in connection with commodities or materials, as merchantable flour, merchantable hay, or merchantable logs or wood. The word "marketable" would not only include all commodities and materials mentioned, but is also applied to a title to land. We shall, however treat the word "merchantable" as it is treated by the parties, as being synonymous with "marketable." A title that is open to reasonable doubt, such as would affect the market value, is not a marketable title. Words and Phrases, pp. 4388, 4389; Adkins v. Gillespie, 189 S. W. 275. By a marketable title is meant one reasonably free from doubts that would affect the market value of the land; a title which a reasonably prudent man, in the light of all the facts and their legal effect, would accept as being satisfactory.

Incumbrances upon premises concerning which a purchase contract has been made, which do not appear by the record to have been satisfied will render the title doubtful and consequently unmarketable, even though the vendor be able to show satisfaction aliunde the record. They are a cloud upon the title which should be removed before the purchaser is called upon to complete the contract. Although there may be an extreme improbability that a mortgage lien will ever be enforced, still the title will be subject to objection. Whenever the abstract or record shows that an incumbrance exists, specific performance by the purchaser will not be enforced on the ground that it is doubtful whether the incumbrance will ever be foreclosed. Maupin, Marketable Title, §§ 306, 307; Brooklyn Park Co. v. Armstrong, 45 N. Y. 234, 6 Am. Rep. 70. The rule as to actions of specific performance is thus stated in Pomeroy on Contracts, § 198:

"If there arises either on the face of the pleadings, or from the examination made during the progress of the suit, a reasonable doubt concerning the title to be made and given by the vendor, the court, without deciding the question between the parties before it—which decision might not be binding upon other persons, and, therefore, might not prevent the same question from being subsequently raised by other claimants to the land—regards the existence of this doubt as a sufficient reason for not compelling the purchaser to carry out the agreement and accept a conveyance."

In Waterman on Specific Performance, § 412, the following pertinent and correct proposition of law is quoted from Dobbs v. Norcross, 24 N. J. Eq. 327:

"Every purchaser of land has a right to demand a title * * * which shall protect him from anxiety, lest annoying, if not successful,

suits be brought against him, and probably take from him or his representatives, land upon which money was invested. He should have a title which should enable him, not only to hold the land, but to hold it in peace, and, if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value."

For a thorough decision of this question we refer to the opinion of this court, rendered through Associate Justice Neill, in the case of Greer v. Stock Yards, 43 Tex. Civ. App. 370, 96 S. W. 79. See, also, Estell v. Cole, 62 Tex. 695.

The facts of this case show that there were several mortgages on the land sought to be conveyed, and no releases were shown in the abstract. These defects were sufficient to justify a refusal on the part of appellees to pay for the land.

[3, 4] The first assignment of error complains of the refusal of the court to admit in evidence a purported release of the mortgages against the property. The contract of sale of the land was entered into on April. 17, 1914, in which it was agreed that the appellants would furnish appellee Vander Stucken an abstract of title "showing merchantable title" to the property, and deliver the same in 30 days. The abstract furnished did not contain the release, and in fact it was not executed until May 15, 1915, about 13 months after the contract was made, and over a year after the attorney for Vander Stucken had advised him that the unreleased mortgages caused a defect in the title, and long after he had refused to proceed further with the purchase. A release properly executed at the time the one in question was signed would not have complied with the terms of the contract. A reasonable time was allowed in which appellants could cure any defects pointed out by appellees. Thirteen months were not a reasonable time in which to obtain the releases of the mortgages.

The release in question purports to have been executed by "The Board of Home Missions and Church Extension of the Methodist Episcopal Church, by Charles M. Boswell, Corresponding Secretary," and it is recited in the instrument that the board which executed it was "formerly Board of Church Extensions," whereas the mortgages were all in favor of the "Board of Church Extension of the Methodist Episcopal Church." · How the· mortgages were transferred from one board to another was not shown, nor was it attempted to be shown that a corresponding secretary had the power and authority to execute the release for the board. It is the claim of appellants that the release "was executed in full accordance with the discipline of the Methodist Episcopal Church," but neither the court below knew, nor can this court know, that assertion to be well founded, in the absence of any proof thereof. A certain provision is quoted from the "Book of Discipline," making corresponding secre-

taries "executive officers of the board, and co-ordinate in authority;" but this court cannot recognize such provision, in the absence of proof of its existence, even if it tended in the least to show authority in one of the secretaries named to execute such an · instrument as a release of mortgages. While being the law of the Methodist Episcopal Church, it is not a statute, and of course cannot be judicially known to. this court. There is certainly no authority found in article 1173, Rev. Stats., for a corresponding secretary to execute a release. The corresponding secretary is not the "president or presiding member or trustee" named in the statute, even if the discipline did make the three corresponding secretaries executive officers of the board, for a president and five vice presidents were provided for, and it cannot be supposed ·that the secretaries were to displace those officers, even if the statute permitted it. The case of Ballard v. Carmichael, 83 Tex. 355, 18 S. W. 734, which held, among other things, that a deed could be executed by the vice president of a corporation, has not the remotest applicability to a release executed by a corresponding secretary. The discipline . of the Methodist Church, in the face of the statute, could not, if it desired, authorize a corresponding secretary to execute a ·deed. The release was properly excluded.

[5] The letter written by Vander Stucken was an offer of compromise and was properly rejected. The whole letter hinges upon the offer of compromise, and no ·statement of a fact is made, which is not so bound up with the offer as to render it impossible to separate them. As stated by this court in Sanford v. Finnigan, 169 S. W. 624:

"It is the rule that, when any fact stated in an offer of compromise can be separated from the offer and still convey the idea in the writer's mind, it is admissible in evidence."

The whole object in writing the letter offered in evidence in this case was a compromise, and no fact is stated that is disconnected therefrom.

[6] It was alleged in the petition that appellants had fully complied with every provision of the contract, one of which was to furnish an abstract showing a marketable title. Appellants failed to show a compliance with the contract in that regard, its abstract showing, not only unreleased mortgages on the land, but a pending suit for taxes and penalties, and, if they desired to depend upon a waiver of the defects in title, they should, in the alternative, have pleaded such waiver. This was not done. The letter could only have been intended to show a waiver because Vander Stucken did not testify, and it was not admissible for purposes of impeachment. If it were intended to show fraud on the part of appellees, ·neither had fraud been alleged. It is well settled that, if a party relies upon waiver to destroy a defense, he must allege and prove it.

Scarbrough v. Alcorn, 74 Tex. 358, 12 S. W. 72; Texas Produce Co. v. Turner (Tex. Sup.) 27 S. W. 583; Howard v. Metcalf (Tex. Civ. App.) 26 S. W. 449; Hollifield v. Landrum, 31 Tex. Civ. App. 187, 71 S. W. 979.

[7-9] We cannot see what bearing the receipt signed by Vander Stucken and two others to appellants for commissions for selling the land had upon the issues in this case. Appellants state that it was an admission that appellants had the right to execute the contract. There was no issue remaining after verdict as to the authority of the trustees to execute the contract. The jury found that they were so authorized. The receipt would not have shown that appellees were estopped to deny that the title was imperfect; but, if it had estopped him, it could not be of avail to appellants because not pleaded. The bill of exceptions is not sufficient to sustain the assignment, because the objections urged to the admission of the evidence are not mentioned therein. Green v. White, 18 Tex. Civ. App. 509, 45 S. W. 389; Grinnan v. Rousseaux, 20 Tex. Civ. App. 19, 48 S. W. 58, 781; Lindsey v. State, 27 Tex. Civ. App. 540, 66 S. W. 332; Johnson v. Crawl, 55 Tex. 571; Stratton v. Riley, 154 S. W. 606.

[10] The court properly rejected the record of a deed purporting to have been made by Edwin H. Terrell and Mary M. Terrell to George W. Brackenridge and others. No effort was made by appellants to comply with article 3700, which allows certified copies of a lost instrument to be used as evidence. There was no affidavit of loss; no certified copy was filed among the papers or notice given to the opposite party. Strict compliance with the statute is required in order to use a copy of a deed. Pennington v. Schwartz, 70 Tex. 212, 8 S. W. 32; Henry v. Bounds (Tex. Civ. App.) 46 S. W. 120. No certified copy of the deed was offered, and the statute makes no provision for the admission of the record itself in evidence.

[11-13] The necessity of an affidavit of loss might possibly be dispensed with, if the evidence of a witness is offered who testifies to diligent search and inquiry made of the proper person and in the proper places. Hill v. Taylor, 77 Tex. 295, 14 S. W. 366; Trimble v. Edwards, 84 Tex. 497, 19 S. W. 772. The bill of exceptions fails to show that this was done. Reference to the statement of facts is not permissible, but the bill of exceptions must stand or fall by its recitals. It fails to show that a single witness was sworn in regard to the loss of the deed. It is, of course, an untenable contention that, the instrument being an ancient one, the record book should have been admitted. Age could not supply the original or a certified copy.

[14] The fifth assignment is overruled. The jury found that the trustees of Trinity

Church had authority to sell the property, and the admission of the written consent of James W. Hervey to a sale would not have made the verdict on that point any stronger or more effective. The bill of exceptions fails to show the grounds of objection to the instrument.

For the same reasons hereinbefore given, under the fourth assignment of error, the sixth assignment is overruled.

[15] The seventh and eighth assignments of error are overruled. Not only did the abstract of title show unreleased mortgages on the property, but showed that there was a suit for taxes pending and that the mechanic's lien of Martin & Nason had not been properly released, and the abstract failed to connect the title with the sovereignty of the soil. The abstract failed to show any facts upon which to base a title by limitations. Appellee could not know what appellants might be able to show as to title by limitation. The abstract did not show, as appellants promised it should, "a complete abstract brought down to date showing merchantable title." Bowles v. Umberson (Tex. Civ. App.) 101 S. W. 842; Nicholson v. Lieber (Tex. Civ. App.) 153 S. W. 641.

The judgment is affirmed.