**BOURLAND v. HUFFHINES et al.***
**(No. 2354.)**

(Court of Civil Appeals of Texas. Amarillo.
Dec. 31, 1924. Rehearing Denied
Jan. 28, 1925.)

1. **Specific performance** &#8709;8, 16—**Vendor and purchaser** &#8709;130(2)—**Specific performance is matter of grace; denied where title is open to reasonable doubt; denied where circumstances make granting of relief inequitable.**

Specific performance is a matter of grace and not a matter of absolute right, and will not be decreed when title is open to reasonable doubt or circumstances are such as to make it inequitable for court of chancery to grant such relief.

2. **Specific performance** &#8709;8—**Grant is within sound discretion of court.**

The granting of specific performance rests in the sound judicial discretion of the court, to be exercised in accordance with established doctrines and settled principles of equity.

3. **Vendor and purchaser** &#8709;130(1)—**Contract held to require vendor to show merchantable title as condition to specific performance.**

Where contract requires vendor to furnish purchaser "an abstract of title showing merchantable title in himself clear of all liens, save those as are assumed," vendor, in specific performance action, was required to show that he had merchantable title, save as to liens to be assumed by purchaser.

4. **Vendor and purchaser** &#8709;134(1)—**Purchaser who had agreed to accept proper warranty deed was not required to take title with outstanding interest in others.**

Where vendor agreed to furnish abstract showing merchantable title clear of liens other than those to be assumed by purchaser, purchaser's agreement to accept proper warranty deed did not bind him to take title with outstanding interest in parties other than those holding liens to be assumed.

5. **Vendor and purchaser** &#8709;143—**Failure of attorney employed to examine abstracts, to point out defect, held not to relieve vendor of obligation to tender merchantable title.**

Where contract required merchantable title, purchaser was not required to accept deed when a two-twelfths interest was outstanding, though attorney employed to give opinion as to sufficiency of title, in advising vendor as to what would be necessary to make abstracts comply with the contract, failed to point out such defect, since in so advising vendor he was acting as agent of vendor, and not purchaser.

6. **Evidence** &#8709;571(1)—**Opinion of attorney testifying as expert as to sufficiency of title not binding on court.**

In specific performance action, the opinion of an attorney as to title, though he testifies as an expert witness, is not binding on the court; ultimate determination as to sufficiency of title being question of law for court.

7. **Specific performance** &#8709;123—**Sufficiency of title is question of law for court.**

In specific performance action, the sufficiency of the title is a question of law for the court.

8. **Attorney and client** &#8709;77—**Attorney is generally a special agent.**

Generally, an attorney is a special and not a general agent, and, when employment is in connection with a particular matter or transaction, his powers are confined to such as are necessary to accomplishment of specific purpose.

9. **Principal and agent** &#8709;147(3)—**Principal, in absence of ratification, not bound by acts of special agent in excess of authority.**

One dealing with special agent does so at his peril, and, if agent exceeds authority, principal, in absence of ratification, is not bound.

10. **Attorney and client** &#8709;81—**Attorney held not authorized to waive stipulation in contract for good and merchantable title.**

Attorney, whose authority was expressly limited to the examination of abstracts and expression of opinion as to condition of title, could not waive stipulation in contract for good and merchantable title by declaring it merchantable.

11. **Attorney and client** &#8709;81—**Vendor bound to take notice that purchaser's attorney could not waive requirement for merchantable title.**

Where contract required merchantable title, vendor *held* bound to take notice that attorney, employed by purchaser to examine abstracts and express his opinion as to the title, had no authority to waive stipulation for merchantable title.

12. **Vendor and purchaser** &#8709;130(2)—**Test as to sufficiency of title, in specific performance action, stated.**

In vendor's action for specific performance defended on ground of defect in title, the question is whether the title is so uncertain as to affect the market value of the land, and court will not decree specific performance if title might be questioned by reasonable and competent prospective purchasers.

13. **Appeal and error** &#8709;909(4)—**Property left by husband at time of death presumed community property, in absence of evidence to contrary.**

In absence of evidence to the contrary, court on appeal must presume that property left by husband at time of his death was community property of himself and wife.

14. **Appeal and error** &#8709;909(4)—**Wife presumed to have survived husband in action involving title to community property.**

In action involving title to land owned by husband and wife at time of husband's death as community property, it will be presumed on appeal, in the absence of evidence to contrary, that wife survived husband.

---

&#8709;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 18, 1925.

**15. Vendor and purchaser ⟨⟩130(4)—Specific performance denied because of uncertainty of title.**

Where land was formerly the community property of husband and wife, and husband's will was ambiguous as to whether wife was given a life estate or the fee therein, and whether her heirs were given a contingent remainder, and where will had never been judicially construed and it did not appear whether wife had elected to take under will or to claim as survivor of community, or whether wife was living at time of executor's attempt to convey land, specific performance of contract to sell such land will not be decreed.

Appeal from District Court, Deaf Smith County; Reese Tatum, Judge.

Suit by C. C. Huffhines against W. S. Bourland and another. Decree for plaintiff, and named defendant appeals. Reversed and rendered in part, and remanded in part.

Turner & Dooley, of Amarillo, and Bonner & Storey, of Vernon, for appellant.

W. H. Russell and Carl Gilliland, both of Hereford, for appellees.

HALL, C. J. This is a suit by Huffhines against Bourland and the First State Bank & Trust Company of Hereford, as depositary of $1,000 earnest money, to enforce the specific performance of a contract made between Huffhines and Bourland for the sale of certain lands alleged to belong to the plaintiff, and for the recovery against the bank of the $1,000. Bourland defends upon several grounds; mainly, because the title tendered by Huffhines is not in accordance with the terms of the contract. The case is before us practically upon the same pleadings and statement of facts which characterized the controversy upon the former appeal as reported in 244 S. W. 847. For the sake of brevity, reference is made to the statement of the issues as made in that report. Such further statement will be here made as is deemed necessary in disposing of the matters presented upon this appeal. The written contract of sale upon which the plaintiff's action was based bound him to furnish Bourland "an abstract of title showing a merchantable title in himself, clear of all liens, save such as are assumed, and first party (Huffhines) to pay all taxes for 1920, and second party (Bourland) to have said abstracts examined and report any defects in writing, and first party to have a reasonable time to cure such defects." The contract further provides that it is "to be executed by first party executing and delivering a proper warranty deed, at which time second party shall make such cash payment and execute and deliver said notes." The trial court decreed specific performance of the contract. The case is before us upon numerous propositions, which, under the view we

take of the record, do not require full and detailed consideration. The principal contention is that the court erred in decreeing specific performance, because Huffhines did not own the entire interest in the land; there being a two-twelfths interest outstanding in the Slaughter estate, and said estate, or the owner of said interest, not being a party to the suit. Huffhines meets this contention by insisting that Bourland, through his attorney, has waived the defect in the title.

This court said, in disposing of the former appeal:

"The jury having found that Roloson was appellant's attorney, authorized to examine the abstracts and pass upon the title, it follows that all defects not pointed out by him were waived."

We are urged by this appeal to review that holding in the light of the record, and it is insisted that this court erred in so holding. To sustain our holding, the cases of Davenport v. Sparkman (Tex. Com. App.) 208 S. W. 658, and Champion v. Taylor (Tex. Civ. App.) 229 S. W. 627, are cited. A review of those cases in the light of the present record convinces us that the appellant's contention should be sustained. The Sparkman Case was not a suit for specific performance, and the waiver there was of the sufficiency of the abstracts under the provisions of the contract of sale, rather than the sufficiency of the title, and the question decided was that of the forfeiture of the earnest money. In the Champion Case there was a prayer for specific performance, and, in the alternative, for the $500 earnest money. The vendor was permitted to recover the earnest money because the vendee refused to consummate the contract. In disposing of the case, Judge Huff quotes from Estes v. Browning, 11 Tex. 237, 60 Am. Dec. 238, to the effect that parties who violate their contracts because they choose to do so, and make their own infractions the basis of an action for money had and received, were urging the adoption of an alarming doctrine, and proceeds as follows:

"There are, of course, certain equitable grounds which present exceptions to the above rule. The parties in this case apparently made time and place the essence of the contract, and appellant having failed to comply by either being at the place and at the time then tendering the money, as we understand, presents no ground in equity to specifically perform as to any part of the land, or to recover the money paid."

In that case the vendee expressly waived that provision of the contract of sale which bound the vendor to make a good and merchantable title, expressing himself as satisfied with the title. It is clearly distinguishable from this case, even as to the right of Bourland to recover the $1,000, by the fact

that Bourland is not shown to have personally waived the requirement as to title, and the further fact that Roloson was never authorized by him to make such waiver.

[1-4] Specific performance is a matter of grace, and will not be decreed when the title is open to reasonable doubt. The remedy cannot be claimed as a matter of absolute right, and will always be denied whenever the circumstances are such as to make it inequitable for a court of chancery to grant the relief. The matter of granting a decree for the specific performance of a contract rests in the sound discretion of the court. This discretion is judicial and must be controlled by established doctrines and settled principles of equity. Such relief will be granted, or withheld, upon a consideration of all the circumstances of the particular case. Under the terms of the contract Bourland is clearly entitled, before being required to perform, to have Huffhines show a merchantable title in himself, save as to the liens which Bourland was under the contract to assume, and it was the duty of Huffhines to convey such title by a proper warranty deed. The agreement on the part of Bourland to accept a proper warranty deed does not bind him to take title which showed an outstanding interest in parties other than those holding liens, and contemplated by the contract. The rule is expressed in 5 Thompson on Real Property, § 4355a, as follows:

"It is the duty of a vendor to tender to his vendee a safe title, and a purchaser is never bound to accept a defective title in the absence of express agreement. A promise to convey such title is always implied in an executory contract for the sale of real estate, and a purchaser is never bound to accept a defective title, unless he expressly stipulates to take such title, knowing its defects. Equity will not compel a purchaser to perform his contract for the purchase of real estate where the title is doubtful. And where there was a failure to furnish title insurance or an abstract showing a clear title, as stipulated in the contract, specific performance will be denied. * * * Where there is any doubt about the validity of the title, or its being free from liens or incumbrances, the court will not decree a specific performance. The title must not be doubtful, its validity resting upon some fact not before the court. The vendor must own the land at the time the suit is brought, or the relief will be usually denied."

The numerous cases cited by the author in support of these principles show that they are practically universal; among them being Burwell v. Sollock (Tex. Civ. App.) 32 S. W. 844, Roos v. Thigpen (Tex. Civ. App.) 140 S. W. 1180, and Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 120, decided by the courts of this state. In determining the question of the sufficiency of the title, the vendee need not look beyond the abstract furnished him. Adkins v. Gillespie (Tex. Civ. App.) 189 S. W. 275; Blomstrom

v. Wells (Tex. Civ. App.) 239 S. W. 227. The courts are practically agreed that specific performance in cases of this character will not be decreed where the vendor cannot show a clear title, but merely one concerning which there is a reasonable doubt, unless the vendee has expressly agreed to accept such title as the vendor may be able to give. If there is any reasonable chance that some third party may raise the question of title against the owner of the estate after the completion of the contract, the vendee will not be compelled to perform, since he will not be required to accept a mere equitable title, or one that will require him to defend his possession in the courts. This is in accordance with the great weight of authority, and is uniformly declared to be the rule in this state. Littlefield v. Tinsley, 26 Tex. 353; Estell v. Cole, 62 Tex. 695; Burwell v. Sollock, supra; Clifton v. Charles, supra; Upton v. Maurice (Tex. Civ. App.) 34 S. W. 642; Webb v. Durrett (Tex. Civ. App.) 136 S. W. 1189; Roos v. Thigpen, supra; Alling v. Vander Stucken (Tex. Civ. App.) 194 S. W. 443; Greer v. Interstate Stockyards Co., 43 Tex. Civ. App. 370, 96 S. W. 79; Giles v. Union Land Co. (Tex. Civ. App.) 196 S. W. 312.

[5-7] According to the evidence, the jury's finding, and the contention of appellee, Roloson was employed only to examine the abstracts of title and point out the defects, if any. That constituted him a special agent only, and expressly limited his authority, and when he assumed to advise Huffhines as to what would be necessary to make the abstracts comply with the requirements of the contract, he must be held to be acting as the agent of Huffhines rather than for Bourland. Under the express terms of the contract, Huffhines must tender a good and merchantable title. The sufficiency of the title, under such stipulation, is a matter for the court, and not Roloson, to determine. Roloson testified that he had never seen the contract between the parties prior to the time he examined the abstracts. It is not claimed that he was ever expressly authorized or empowered by either Bourland or his son-in-law, Thompson, to waive the express stipulation in the contract as to a merchantable title. The contract makes this a condition precedent to performance. In the absence of such waiver by Bourland, or some one thereunto authorized by him, specific performance cannot be decreed if the title is reasonably doubtful. The good faith of Roloson is not questioned. The contract does not stipulate that either party shall be bound by the opinion of Roloson or any other attorney as to the condition of the title. It is settled law in this state that the opinion of an attorney as to the title, although he testifies as an expert witness, is not evidence binding upon the court. Brackenridge v. Claridge, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593; Moser v. Tucker (Tex. Civ. App.)

195 S. W. 259; Nicholson v. Whyte (Tex. Civ. App.) 236 S. W. 770; Tate v. Morris & Co. (Tex. Civ. App.) 248 S. W. 797, 800; Wakeland v. Robertson (Tex. Civ. App.) 219 S. W. 842. The ultimate determination as to the sufficiency of the title in suits of this character is a question of law for the court.

The record shows that Huffhines did not have a merchantable, or in other words a marketable, title to all of the land either, at the time the contract was executed, at the date fixed for performance, or when he filed his suit. The courts of other jurisdictions are not in harmony as to what time the vendor seeking specific performance must have such title as the contract requires. It seems that the Texas decisions tend to fix the time not later than the date upon which his suit is filed. Tison v. Smith, 8 Tex. 147; Bufford v. Ashcroft, 72 Tex. 104, 10 S. W. 346; Clifton v. Charles, 53 Tex. Civ. App. 448, 116 S. W. 120; Allen v. Vander Stucken (Tex. Civ. App.) 194 S. W. 443; Henderson v. Jones, 227 S. W. 736. It is unnecessary to discuss this phase of the case, since it appears that Huffhines had never acquired the two-twelfths interest shown by the abstract to be in the Slaughter estate, even at the time of the decree. The question of the sufficiency of the title will be discussed later.

[8-11] Appellee's contention in this connection is: Because Roloson was authorized to examine the title, and told Huffhines' agent, Johnson, that when the will and the proceedings probating same were recorded in Castro county and shown in the abstract, that he would pass the title; that such action on his part waived the requirements of the contract as to the sufficiency of the title. We cannot assent to this contention. As a general rule, an attorney, like a broker, factor, or others acting in a limited sphere, is not a general, but a special, agent for his client, and when his employment is in connection with a particular matter or transaction, his powers are confined to such as are necessary to the accomplishment of the specific purpose for which he was employed. 1 Mechem (2d Ed.) §§ 70, 71. It is said that an attorney is such special agent, that the rule which requires the principal to give notice of any limitation of his general agent, or any agent who has apparent authority, does not apply. Magill v. Rugeley (Tex. Civ. App.) 171 S. W. 528; Wright v. Daily, 26 Tex. 730; Gordon v. Sanborn (Tex. Civ. App.) 35 S. W. 291. One dealing with a special agent does so at his peril, and if the special agent exceeds his authority, then the principal, in the absence of ratification, is not bound by his acts. W. U. Tel. Co. v. Morrow (Tex. Civ. App.) 208 S. W. 689; Reese v. Medlock, 27 Tex. 120, 84 Am. Dec. 611; Fowler v. Cobb (Mo. App.) 232 S. W. 1084; Gouldy v. Metcalf, 75 Tex. 455, 12 S. W. 830, 16 Am. St. Rep. 912; Skaggs v. Murchison, 63 Tex. 348; Mann v. Dublin Cotton Oil Co., 92 Tex. 377, 48 S. W. 567; Fidelity Trust Co. v. Fowler (Tex. Civ. App.) 217 S. W. 953. It appears that Johnson, the agent of Huffhines, who negotiated the sale, was present when it is claimed that Thompson employed Roloson to examine the abstracts of title, and was largely instrumental in bringing about the employment of Roloson. It is conceded that Roloson's express authority was limited to the examination of the abstracts and giving his opinion as to the condition of the title. The question is, with such limited authority, can he, by declaring the title merchantable when it is clearly not so, waive the stipulation in the contract of sale for a good and merchantable title? This inquiry must be answered in the negative. His authority to bind Bourland is limited to that conferred by his principal, and Huffhines, with knowledge of his special agency, is bound to take notice of the extent of his powers.

"The language, oral or written, used in clothing an agent with his authority should be given its ordinary and natural meaning in view of the principal's purpose, and not an unreasonable or strained construction either to enlarge or restrict the agency, and the authority is never to be extended by mere construction beyond that which is expressly given, or which is necessary and proper to carry the authority so given into effect." 2 C. J. (Agency) § 198.

Through his agent Johnson, Huffhines is conclusively presumed to know the extent of Roloson's authority and under such conditions, 2 C. J. (Agency) § 210, states the law which governs the rights of the parties as follows:

"Instructions modifying or limiting the authority of the agent which are known to a person dealing with him, are as binding upon such person as they are upon the agent, and he can acquire no rights against the principal by dealing with the agent contrary thereto. The principal may make the authority of his agent as broad or as narrow as he will, and any lawful limitations which he chooses to impose upon the agent's powers and which are not in the nature of secret instructions, will be as binding upon third persons legally charged with notice of them, as upon the agent himself, and if the original authority is a restricted and limited one, then such limitations form part of the power itself, and third persons must know them at their peril. * * * If specific instructions are brought home to the knowledge of a third person dealing with the agent, it cannot matter whether he is a general or special agent; in either case his power to bind his principal will be limited by these known instructions or limitations."

Again, it is said in Id. § 223:

"It is a general rule that the authority of a special agent must be strictly pursued, and this authority must be limited to the particular business and particular instructions given. * * * Persons dealing with such an agent must, at their peril, inquire into the nature and

extent of his authority, and deal with him accordingly, for as in the case of acts and transactions of a general agent, a special agent cannot bind his principal by acts outside the scope of his authority."

"The authority of the special agent being in its nature, limited—suggesting restrictions and qualifications, which may be discovered upon investigation—its scope is much more easy of determination, and must not be exceeded; or, as the rule is ordinarily stated, his authority must be strictly pursued, and if it is not, the principal will not be bound. A person dealing with a special agent, as constantly said, 'Acts at his own peril,' 'He is put upon inquiry,' 'He is chargeable with notice of the extent of his authority,' 'It is his duty to ascertain,' 'He is bound to inquire,' and, 'If he does not, he must suffer the consequences.' " 1 Mechem on Agency (2d Ed.) § 742.

In Tompkins' M. & I. Co. v. Peter, 84 Tex. 627, 19 S. W. 860, there was a controversy between plaintiff and defendants as to the sale, and plaintiff sent its agent to settle with defendants, positively refusing to authorize him to take back the machines and limited his authority to the accceptance of payment of the agreed price. Pickens, the agent, settled by taking the machines, and defendants contended that this was within the apparent scope of his authority and bound the Machinery Company. The Supreme Court said:

"We cannot agree to this. * * * When Pickens was sent with the account, it was the duty of defendants to ascertain his agency, if he had any, and its extent. * * * Very little authority could be inferred from this fact. This was defendants' first transaction with him as plaintiff's agent. It was but natural and prudent, under the circumstances, that they should inquire and learn what kind of an agent he was, and the extent of his powers; at least, the law charged them with this duty, and, if they neglected it, they did so at their own peril. They had to look to it, and know if he had any authority at all. His presenting himself as agent, and his declaration to that effect, were no evidence of the fact. Having no authority in writing, they assumed that he was a duly authorized agent, with full powers. They took the risk of this being true. It turned out, so far as the testimony gives us any light upon the subject, that he only had authority to collect the debt, and none to commute or compromise. He may have had other authority, but the testimony does not show it. The testimony is positive, so far as it goes, that he was forbidden from exercising such other authority. The actual authority, then, must control the rights of the parties. There is no incidental intendment, of law or fact, deducible from the actual power that could add to it the right to settle the claim, except as prescribed in the contract, or to remit any part of the debt. Robson v. Watt's Heirs, 11 Tex. 764; McAlpin v. Cassidy, 17 Tex. 449; McAlpin v. Ziller, Id. 508; Merriman v. Fulton, 29 Tex. 98; Story, Ag. §§ 97–102, inclusive. There is no fact in the case suggesting a 'holding out' of Pickens as agent with authority to com-

promise. Looking to the testimony that principle cannot be invoked."

The material facts in Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323, are that the owner of certain lots wrote his agent saying:

"I will sell the lots for $19,000 and pay you 5 per cent. com. plus $50, or $1,000 com. in all, for making the sale. In other words, I want $18,000 net for my lots. Terms, $3,000 cash; bal., long time."

The agent made the sale, but took the purchaser's notes payable "on or before." The owner refused to consummate the sale, and the Supreme Court denied the purchaser a recovery, saying, in part:

"However, we must affirm the judgment of the court below in this case, because the agents in making the sale did not observe the limitation of their authority expressly stated in the letter which conferred that power. Mr. Pomeroy expresses the rule applicable to this case as follows: 'Where the delegation of authority is express and special, and the other party dealing with the agent cannot fall back on any larger implied powers, the limitations may relate to the manner and form of executing the contract, as well as the substantial terms which it shall contain; and in such a case the agent must keep within the restricted authority conferred upon him, and strictly pursue the method prescribed by his instructions.' * * * Because Gilliland & Harwood failed to pursue the authority given them, no valid sale was made, and the plaintiffs in error showed no right to the relief sought."

Morgan v. Harper (Tex. Com. App.) 236 S. W. 71, is a suit instituted by Morgan for specific performance of a contract of sale made by Harper's agent, Harper denying the agent's authority to make the particular contract. While the judgment was reversed for error in excluding certain testimony, Judge Hamilton announces the following general rule relative to the liability of a principal for the acts of his special agent:

"The rule of the common law applicable to express or special agencies is that no man can be bound by the act of another without or beyond his consent; and where an agent acts under special or express authority, whether written or verbal, the party dealing with him is bound to know, at his peril, what the power of the agent is and understand its legal effect."

In Green v. Priddy, 112 Tex. 567, 250 S. W. 656, the authority of Moore, a special agent, was one of the matters discussed, and Judge Gallagher, in his well-considered opinion citing the three last-mentioned cases, said:

"Whatever power he [Lesh] delegated to Moore in that connection was express and special. Priddy, in dealing with Moore, could not fall back upon any supposed enlargement of such power by implication. Moore had only such power and authority in the premises as Lesh had actually conferred upon him. He could not bind Lesh by assuming greater power

or authority, notwithstanding he may have acted in good faith in doing so, and notwithstanding Priddy may have believed that he possessed all the power he assumed to exercise, and may have relied on such belief in signing the contract and delivering his check. * * * The rule that a special agent must keep within his actual authority applies to the time and circumstances of executing the contract as well as to the substantial terms it shall contain. In such case, to bind the principal the agent must keep within the restrictions, and must strictly pursue the methods prescribed by his instructions. * * * Lesh promptly repudiated the transaction between Moore and Priddy, and directed Moore to return Priddy's check as soon as he learned of the same, and said check was promptly tendered to him."

The limitation upon the authority of an attorney employed for a special purpose, and the rights of a third party dealing with him, are discussed at length by Chief Justice Cureton in the case of Ferguson v. Mansfield (Tex. Sup.) 263 S. W. 894, where numerous authorities are cited, and the conclusion reached is in accordance with the principles herein announced. Johnson, who was Huffhines' broker and agent, knew that Roloson was employed by Bourland's son-in-law, Thompson, only to examine the abstracts and point out defects, if any, in the titles. He knew that Roloson had no express authority to waive any material stipulation in the contract. Aside from the fact of the actual knowledge of his agent Johnson as to the extent of Roloson's authority, Huffhines must be held to know that an attorney employed to examine an abstract of title and point out defects is a special agent only. Bourland himself, or some one by him expressly authorized, could alone waive that stipulation of the contract requiring a merchantable title, and it is held that even a waiver by Bourland would not be binding upon him, unless supported by a consideration, or made under such circumstances as amounts to an estoppel. Crutcher v. Aiken (Tex. Civ. App.) 252 S. W. 844. It is not contended that Bourland in person waived the stipulation, or authorized Roloson to do so. Neither waiver in that manner nor estoppel have been pleaded, and there is no evidence in the record which tends to show that Bourland, either by words or conduct, indicated that Roloson had authority to waive the requirement as to title. Holmes v. Tyner (Tex. Civ. App.) 179 S. W. 887; J. I. Case T. M. Co. v. Morgan (Tex. Civ. App.) 195 S. W. 922; Stratton-White Company v. Castleberry, 15 Tex. Civ. App. 149, 38 S. W. 835; W. D. Cleveland & Son v. Houston Sporting Goods Store (Tex. Civ. App.) 166 S. W. 912; J. Kennard & Sons C. Co. v. Houston Hotel Association (Tex. Civ. App.) 197 S. W. 1139.

Our conclusion is that Roloson had no authority, either express or implied, to waive the stipulation as to title; that the stipulation has not been waived by Bourland or any one authorized to do so for him; and that Huffhines, with knowledge of the special agency of Roloson, was bound to know the extent of his authority, and cannot claim that the stipulation has been waived. In 5 Pom. Eq. Jurisp. (2d Ed.) § 2223, the author says:

"The rule is now well settled that equity will not compel an unwilling purchaser to accept a doubtful title which will expose him to the expense and hazard of litigation. It will not force him to buy a lawsuit. He need not take the title unless it is marketable—i. e., merchantable—free from any defect that will affect its value in the eyes of subsequent purchasers from the vendee. That may be a good title which a court of equity, in the exercise of its discretionary power, will not force on an unwilling purchaser. Every purchaser should have a title which shall enable him, not only to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaws or doubt will come up to disturb its merchantable value. The threat, or even the possibility of a contest will not be sufficient. The doubt must be considerable and rational, such as would and ought to induce a prudent man to pause and hesitate, not based on captious, frivolous and astute niceties, but such as to produce real bona fide hesitation in the mind of the chancellor."

[12] In this statement of the rule Pomeroy, has fairly summarized the rules which govern the courts in cases of this character. The questions affecting the titles in this case in so far as the will of Slaughter is concerned, have to do with the construction of the will, the power of the independent executor under it, and the proper exercise of that power as it affects the rights of the surviving wife, and other heirs of the testator, and others who may possibly be interested in the land. In so far as the record discloses, the will has never been construed by the courts, and, if in the construction of the will it is found not to be so free from reasonable doubt as to justify the court in compelling Bourland to accept a deed made under it, no such decree should be entered. The question here is, not whether the trial court, or this court, thinks the title is doubtful, but, rather, is there such uncertainty as will affect the market value of the land in the hands of Bourland? Townshend v. Goodfellow, 40 Minn. 312, 41 N. W. 1056, 3 L. R. A. 739, 12 Am. St. Rep. 736. Though the court may be inclined to have a favorable opinion of the title, yet, if we are satisfied that it may be questioned by reasonable and competent prospective purchasers, then specific performance should not be decreed. Turner v. McDonald, 76 Cal. 177, 18 P. 262, 9 Am. St. Rep. 189. And this is the rule where there is uncertainty whether the conditions existed for the exercise of the power of sale by the executor. Montrose Realty & Imp. Co. v. Zimmerman (N. J. Ch.) 73 A. 846. Con-

struction of the will by this court favorably to the plaintiff would not bind Mrs. Slaughter nor any other heir of S. H. Slaughter, since they are not parties to the action. If there is such doubt that might reasonably affect the market value of the land, Bourland should not be required to assume the burden and risk of litigating with other claimants or their assignees. Hunting v. Damon, 160 Mass. 441, 35 N. E. 1064. Some of the very questions which arise here in the construction of Slaughter's will, and rights of interested parties under it, were discussed in Wilson v. Vogel, 87 N. J. Eq. 584, 101 A. 173, and Fisher v. Eggert (N. J. Ch.) 64 A. 957, and in both cases the New Jersey court held that specific performance should not be decreed because there was a reasonable doubt as to the title which might be conveyed under the wills. See, also, Richards v. McKnight, 64 N. J. Eq. 196, 53 A. 452, and Zane v. Weintz, 65 N. J. Eq. 214, 55 A. 641.

[13-15] The will recites that the testator owns two houses and lots in the city of Dallas; "one is clear, and one is not at this date." There are other statements in the will indicating that Slaughter was indebted to a considerable extent. It does not appear from the abstracts whether Mrs. Slaughter was dead or alive at the time the independent executor, C. B. Slaughter, attempted to convey to Wilson et al. The will recites:

"I legally hold a one-fifth interest in some lands in the west and Dallas county, but these properties are heavily involved in debt in private loan and mortgage. My books and invoice will show the condition of my book business."

The independent executor is directed to collect all outstanding indebtedness, pay all claims against the estate, including whatever debt there may be against the house and lot in Dallas, and—

"Fourth, as to the company land represented by C. C. Huffhines and others at Richardson, seek to surrender all title to all lands held by said company by surrendering all notes held by me against said company."

The will further provides:

"That the title of all property not otherwise provided for shall remain vested in my wife, Mrs. S. H. Slaughter, for her support until death. At that time all that yet remains, whether it is personal or realty, shall be sold to the best advantage, and equally divided among my heirs yet living."

It does not appear from the record that any inventory and appraisement of the property was ever filed in the probate court of Dallas county, nor what has been done, if anything, by the widow or independent executor under the will since its probate. Is the land in question a part of that "land in the west" mentioned in the will, and has "the company" been divested of all claim to it? In the absence of evidence to the contrary, we must presume that the property in question was, upon the death of Slaughter, community property of himself and wife, and we may reasonably presume that she survived him. Was it the intention of Slaughter to dispose, by his will, of her interest in the community, and place the whole property in the hands of the executor? If so, has Mrs. Slaughter elected to accept under the will, or will she claim as survivor of the community? What, if anything, has been done by the executor and Mrs. Slaughter towards surrendering the notes which the testator says he held against the company land represented by Huffhines and others at Richardson? Does the last paragraph of the will quoted above vest only a life estate in Mrs. Slaughter, or does she take the fee? Who are the heirs, and have they a contingent remainder? What effect, if any, has the rule in Shelley's Case under the will? These questions, and others, would suggest themselves to the careful examiner, and before they can be answered authoritatively, he must know whether Mrs. Slaughter was living at the time the executor attempted to convey the land in question, and all that has been done by her, the executor, and other joint owners of the land in the west, of which this is presumably a part. Unquestionably these matters should all be settled in an action or proceeding, to which all possible claimants have been made parties, and it is not only inequitable, but is contrary to the terms of the contract, to impose that burden upon Bourland. Freeman v. Tinsley (Tex. Civ. App.) 40 S. W. 835. It seems that the will has been probated. While there is a stipulation by counsel in the record that the will and proceedings probating it had never been incorporated in the abstract, yet we have, in considering the case, proceeded as if this had been done.

The judgment, in so far as it decrees specific performance of the contract, is reversed and is here rendered for appellant.

As stated, the suit is for specific performance, and in the alternative for the recovery of the $1,000 earnest money held by the bank. As this branch of the case was not developed during the trial, the cause will be remanded for a further trial upon that issue. The original opinion is withdrawn.

Reversed and rendered in part, and remanded in part. Raywood C. & M. Co. v. Sharp (Tex. Civ. App.) 175 S. W. 499; Carlisle v. Green (Tex. Civ. App.) 131 S. W. 1140; 13 C. J. 655, 701.